## No. 41,519

MABELLE M. JENKINS, formerly Mabelle M. Balloun, individually, and as Trustee of the R. G. Balloun, Trust, *Appellant,* v. UNITED STATES FIRE INSURANCE COMPANY, a Corporation, *Appellee.*

(347 P. 2d 417)

Opinion filed December 12, 1959.

*J. Eugene Balloun,* of Russell, argued the cause and *Oscar Ostrum,* of Russell was with him on the briefs for the appellant.

*George W. Holland,* of Russell, argued the cause, and *Marvin E. Thompson* and *Clifford R. Holland, Jr.,* both of Russell, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This was an action on a fire insurance policy to recover for a loss, alleged to have been covered under terms of the policy providing that the defendant company insured the property covered against all direct loss caused by collapse of building(s) or any part thereof, subject to certain listed limitations and exceptions. Judgment was for the defendant and the plaintiff appeals.

The facts necessary to a proper understanding of the issues involved are as follows:

Plaintiff commenced this action by filing a verified petition on December 31, 1957. In substance she alleged that she was the acting trustee of the R. G. Balloun trust; that the defendant was an authorized insurance company insuring against fire and other natural hazards; that she was the recipient of an insurance policy insuring certain residential property under the Balloun trust against fire and other perils, a copy of which was attached as Exhibit "A"; that for an additional premium defendant agreed to insure plaintiff against "additional perils"; one peril being the collapse of a building or any part thereof, subject to certain enumerated exceptions and limitations.

The petition further alleged:

"(7) That during 1956 and the early part of 1957, and prior thereto, the earth and ground surrounding and adjacent to the basement walls and foundation of said house contracted, leaving an air space between said earth and ground and the basement walls and foundation. Plaintiff further alleges that said contraction was due to and caused by dryness and lack of moisture in said earth and ground. That during the spring months of 1957, and particularly during the months of May and June, 1957, above average rainfall fell in and around Russell, Kansas, and said rainfall caused the earth and ground adjacent to said basement walls and foundation to become saturated with water, and in particular, filled the air space between said earth and ground and the basement walls and foundation with water. As a result of this condition, the basement walls and foundation expanded inward, and began to bulge, crack, break and collapse, and in June, 1957, did expand, bulge, crack, break and collapse. This said collapse did not happen from any of the causes excepted in said policy.

"(8) That plaintiff duly performed all the conditions of said policy on her part, except that defendant within 60 days after the occurrence of said collapse notified plaintiff that it was not liable upon said policy for the reason that it did not consider such damage a 'collapse' as is contemplated in the policy, and thereby defendant waived the presentation of plaintiff's proof of loss."

The petition closed with a statement of the amount of loss and damages sustained as a result of the alleged collapse of the basement walls, request for reasonable attorney fees, and a prayer for judgment.

Exhibit "A" mentioned above was a standard fire insurance policy providing the insured with fire, lightning and extended coverage insurance on a residence property. In addition and attached thereto was a so-called "additional perils" coverage. This form, insofar as is deemed pertinent to the issues involved in this case, states as follows:

"SECTION IV. PERILS INSURED AGAINST (THE ITALICIZED LETTERS FOLLOWING EACH PERIL REFER TO APPLICABLE PARAGRAPHS OF SECTION V 'LIMITATIONS AND EXCLUSIONS')

"This policy insures against all direct loss to the property covered caused by:

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"14. Collapse of building(s) or any part thereof. (A. C. I)

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"SECTION V. LIMITATIONS AND EXCLUSIONS THIS COMPANY SHALL NOT BE LIABLE:

"(A)  .  .  .

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(C) As respects Perils 5, 12, 14 (here involved), 15, 16, 17 and 18: For loss caused directly or indirectly by earthquake, backing up of sewers or drains, or by flood, inundation, waves, tide, tidal wave, high water, overflow of streams or bodies of water, or spray therefrom, all whether driven by wind or not.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(I)  .  .  ."

On May 24, 1958, the defendant insurance company filed an answer the contents of which need not be set out except to note that defendant generally and specifically denied the allegations of plaintiff's petition, including waiver of proof of loss. In particular the defendant denied that the basement walls collapsed during the period alleged but if they did it was due to some other cause in existence previous to the issuance of said policy; alleged that if the policy did cover the alleged damage, such damage was caused by conditions specifically excluded by the insurance policy; and further denied that the basement walls had collapsed as contemplated by such policy.

Plaintiff filed a reply in the form of a general denial and the cause proceeded to trial by a jury.

After the introduction of evidence each party moved the court

to direct the jury to return a verdict in his favor. Both motions were overruled. Thereupon plaintiff requested certain instructions which were refused by the court. In passing we note that plaintiff objected to the submission of any special questions.

Thereupon the court instructed the jury, submitting thirteen written instructions. Of these instructions, 7 to which the plaintiff objected, is important to a decision of the decisive issue involved and should be quoted. It reads:

"(7) You are instructed that the word 'Collapse' as used in the clause, 'Collapse of building or any part thereof' means a settling, falling, cracking or breaking of the building or any part thereof, which materially impairs the basic structure or substantial integrity of the building so as to render it unsuitable for use as a dwelling."

After the cause was submitted to the jury that body caused a communication to be delievered to the court wherein it stated it would like the words "so as to render it unsuitable for use as a dwelling" stricken from the court's instruction 7. It was advised by the trial judge that he was not at liberty to change the instruction by striking out any part of it and directed to return to the jury room and continue its deliberations.

Some two hours after returning to the jury room the jury returned a general verdict in favor of the defendant and against the plaintiff along with its answer to one of three special questions submitted by the court. Such question and answer read:

"(1) Do you find from a preponderance of evidence that a collapse, as that term is defined in the Court's instructions, occurred to the insured building or any part thereof? Answer: No."

For obvious reasons it failed to answer questions (2) and (3) which read:

"(2) If your answer to Question (1) is 'Yes,' then state when said collapse occurred. Answer:

"(3) If your answer to Question (1) is 'Yes,' do you find from a preponderance of evidence that within 60 days after the occurrence of said collapse that the defendant was informed of the plaintiff's claim for loss therefore, and notified plaintiff that defendant was not liable for such loss? Answer:"

Following action as above indicated the court accepted the verdict and the answers to the special questions and ordered both be filed with the record in the case. It then discharged the jury and rendered judgment in favor of the defendant.

Thereafter plaintiff filed a motion for a new trial which, for all purposes here important, may be said to be founded on all grounds

recognized by statute (G. S. 194, 60-3301). When this motion was overruled she perfected the instant appeal.

The theory on which this case was brought, defended, tried and determined in the court below has been previously related and all that now need be said on such subject is that the basic issue involved was whether appellant could recover for an alleged settling, cracking and breaking of the wall and/or walls (particularly the north wall) of the basement of a dwelling insured under the provisions of a policy of insurance (see Section IV of the policy heretofore quoted) insuring her against all direct loss to the property caused by "collapse of building(s) or any part thereof."

Moreover, in view of the disposition to be made of this appeal under the issues raised and presented, it is neither necessary nor required that we here detail the evidence adduced by the parties during the trial. With respect thereto it suffices to say that although no one contends the basement walls had fallen, there was evidence of a crack running lengthwise almost all the way around the basement walls and, with reference to the north wall, that such wall had settled, cracked and bulged to the extent its condition created an unsafe and dangerous situation with a possibility of its caving or falling in.

Before turning to the issues here involved it should be pointed out that, in both their briefs and on oral argument, the parties concede this is the first time this court has been called upon to pass upon any question involving the comparatively new collapse provision now used in fire insurance policies, hence this is a case of first impression in Kansas. Indeed counsel for appellant states in his brief that an exhaustive research has revealed only one case involving such clause, that case being *Whaley v. Travelers Fire Insurance Company*, U. S. Dist. Ct., D-Kan. No. W-1452 (decided November 21, 1958, and unreported) which we pause here to note has been affirmed, since this case was argued on appeal, by the United States Court of Appeals, Tenth Circuit (See *Travelers Fire Insurance Company v. Whaley*, 10 Cir., 272 F. 2d 288). Except for the November 21, 1958, decision in the *Whaley* case counsel for appellee cite no decisions involving the clause in question, hence we may assume they found no others.

It should also be noted that our extended review of the authorities discloses two additional decisions from other jurisdictions dealing with the force and effect to be given identical collapse provisions as used in other insurance policies. See *Central Mutual*

*Insurance Co. v. Royal,* 269 Ala. 372, 113 So. 2d 680, and *Nugent v. General Insurance Company of America,* 8 Cir., 253 F. 2d 800.

The first question raised by appellant is that the trial court erred in its instructions to the jury. The all-decisive instruction, in fact the only one given by the court which is here complained of, is instruction 7, heretofore quoted, on "collapse." Specifically, appellant's position on this point is that it was improper for the trial court to add the last eleven words, "so as to render it unsuitable for use as a dwelling," to instruction 7 and that the inclusion of those words was error prejudicing her substantial rights and therefore requires the granting of a motion for a new trial. Pointing out the general definitions appearing in well-recognized dictionaries and 2 cases (*The Louisville Underwriters v. Durland et al.,* 123 Ind. 544, 24 N. E. 221, and *Skelly Aplnt., v. Fidelity And Cas. Co.,* 313 Pa. 202, 169 Atl. 78), not involving the clause now under consideration, the essence of all contentions advanced by appellee respecting instruction 7 is that the word "collapse," as used in the policy, is unambiguous and should be construed in its plain, ordinary and usual meaning, hence, since the instruction did not recognize or include in substance the definition of "collapse" as it appears in the dictionaries (see, *e. g.,* Webster's New International Dictionary, [Second Edition], Unabridged, p. 524) and in 14 C. J. S., pp. 1316 and 1317, the instruction was erroneous for that reason. Boiled down and stripped of all excess verbiage the gist of appellee's position on this point is that there was no coverage under the collapse clause of the policy until the basement walls fell into a flattened, wrecked or distorted state.

In approaching a decision of the question to which we have heretofore referred and in disposing of contentions advanced by the parties with respect thereto we are not inclined to here labor the four decisions dealing with the import to be given the collapse clause of an insurance policy such as is here involved. They speak for themselves and can be found in the books as cited. Suffice it to say there is an equal division among the courts rendering those decisions on the subject. To illustrate in *Central Mutual Insurance Co. v. Royal,* supra, and *Nugent v. General Insurance Company of America,* supra, each court determined in effect that facts similar to those here involved did not bring the plaintiff's claims within the coverage of the collapse clause of the policies in question; whereas in the *Whaley* case, both in the U. S. Dist. Ct., D-Kan., and in the United States Court of Appeals, Tenth Circuit, it was

held that under similar facts like claims were covered by such a clause in a policy. Moreover, it is interesting to note that in the Royal case the defendant's contention the collapse clause of an insurance policy was unambiguous, was upheld and the judgment of the lower court in favor of the plaintiff reversed on the ground that, since there was no proof the house involved had fallen down or caved in, there was no collapse of the house or any part thereof within the meaning of the policy; whereas in the *Whaley* case, in affirming the decision of the U. S. Dist. Ct., D-Kan. the United States Court of Appeals Tenth Circuit, in effect rejected the narrow abstract construction of the word "collapse" and defined the collapse clause of the policy in the sense it concluded the parties intended when they executed the contract.

Upon careful analysis and consideration of the decisions to which we have referred in the preceding paragraph of this opinion, and others cited by counsel for the parties regarding their respective positions, we are disposed to place our own construction on the collapse clause of the involved policy.

In view of the conclusion just announced it can now be stated we reject appellee's contention that such clause is unambiguous and hold that it is susceptible of more than one construction. In that situation the manner in which the clause is to be construed and the test to be applied in construing it is well-established. See *Braly v. Commercial Casualty Ins. Co.*, 170 Kan. 531, 227 P. 2d 571, which holds:

"Where it is susceptible of more than one construction the language of a policy of insurance, like any other contract, must, if possible, be construed in such manner as to give effect to the intention of the parties at the time it was made as expressed therein.

"In determining intention of the parties under the rule announced in paragraph 5 of this syllabus the test is not what the insurer intended the words of the policy to mean but what a reasonable person in the position of the insured would have understood them to mean." ( Syl. ¶¶ 5, 6.)

When construed on the basis of intention, as required by the foregoing decision, and others therein cited, we believe the clause "collapse of building or any part thereof" as used in the involved insurance contract is to be interpreted as comprehending that, if brought about by unusual and extraordinary circumstances which the parties to that agreement could not normally expect or foresee on the date of its execution, the settling, falling, cracking, bulging or breaking of the insured building or any part thereof in such

manner as to materially impair the basic structure or substantial integrity of the building is to be regarded as a "collapse" of the building within the meaning of that word as used in such clause of the policy. We further believe that questions relating to whether that condition came about under the previously related conditions and circumstances are questions of fact for the jury and the trial court.

Having reached the conclusion just announced we have no difficulty whatsoever in concluding that, whatever may be said respecting the propriety of instruction 7 as a whole, the trial court's action, in adding to such instruction the words "so as to render it unsuitable for use as a dwelling," was clearly erroneous. By the inclusion of such words it added something more to the collapse clause of the policy than the clause itself required, i. e., that the "collapse" contemplated by its terms be so serious in character as to cause the entire building to be unsuitable for use as a dwelling. Moreover, it is to be noted the policy itself insured against all direct loss to the property covered caused by collapse of building(s) *or any part thereof*. The emphasized portion of the policy itself precludes the giving of the portion of the instruction complained of by the appellant.

It is neither necessary nor required that we here labor contentions advanced by appellee that the error just mentioned does not require the granting of a new trial. Nor are we inclined to burden our reports with arguments made by appellant that having been granted a new trial she is now entitled to judgment on the undisputed facts. All that need be said is that we have carefully considered such contentions and find that, under the existing facts and circumstances, they lack merit and cannot be upheld.

In conclusion it should be stated we have disregarded, not overlooked divers other questions raised by the parties relating to requested instructions and other matters relating to rulings the trial court may or may not be called upon to make in connection with a new trial. This, we may add, is in accord with the settled policy of this court. See *Bailey v. Talbert* (this day decided), 185 Kan. 610, 347 P. 2d 415, where it is held:

"When a new trial is ordered by the supreme court, the case is left for trial upon issues framed by the pleadings as though no trial had been had and the parties are restored to the same condition they were in before the first trial was had or judgment rendered." (Syl. ¶ 1.)

And in the opinion said:

". . . When a new trial is ordered by an appellate court, the parties are restored to the same condition they were in before the former trial was had or judgment rendered. (*Bank v. Edwards,* 84 Kan. 495, 497, 115 Pac. 118.) When this court ordered a new trial in the court below, the case was left for trial upon issues framed by the pleadings as though no trial had been had. (*Commander-Larabee Milling Co. v. McBride,* 152 Kan. 709, 107 P. 2d 668, cited and followed in *Nicholas v. Latham,* 179 Kan. 348, 353, 295 P. 2d 631.)"

The judgment is reversed with directions to grant a new trial and proceed in accord with the views expressed in this opinion.

It is so ordered.