REGAN, Judge.
The plaintiff, Jac PI. Samuel, filed this suit against the defendants, the Sewerage and Water Board of New Orleans, Aetna Casualty and Surety Co., Liberty Mutual Insurance Co., and Granite State Insurance Co., the insurers of his residence under standard homeowners’ policies from December, 1958, until September, 1962, endeavoring to recover the sum of $11,707.02 representing damages which he asserts were caused by the negligence of the Sewerage and Water Board in improperly filling a ditch which it dug for the purpose of laying sewer pipe on or near his property line during the month of July, 1959.
The Sewerage and Water Board pleaded the exceptions of no right or cause of action predicated upon it governmental immunity. These exceptions were initially overruled; however, the trial court later sustained them after a trial on the merits. The immunity of the Sewerage and Water Board from suits of this nature is not seriously disputed on appeal, and consequently it does not constitute an important issue herein.
The defendant insurers answered, and denied the allegations of the petition. In addition thereto, they asserted affirmatively that the homeowners’ policies issued by them to the plaintiff did not afford coverage for his loss.
Following a trial on the merits, judgment was rendered in favor of the plaintiff against Granite State Insurance Co. in the amount of $9,857.00. Plaintiff’s suit against all other defendants was dismissed. From this judgment, the plaintiff and Granite State Insurance Co. have prosecuted this appeal.[1]
The record reveals that the plaintiff is the owner of a two story brick veneer home located in number 1 Wren St. in the city of New Orleans. This home was erected in 1946, and was approximately eighteen years of age when the trial hereof occurred.
In the month of September, 1959, the Sewerage and Water Board replaced a sewer line along the side of the plaintiff’s residence which borders on Marconi Drive. In order to install the sewer, the Board dug a trench approximately seven to ten feet deep and four to six feet wide running the entire length of the plaintiff’s property line. Upon the completion of this section of the sewer line, the Sewerage and Water Board backfilled the excavation.
Between the months of December, 1959, and February, 1960, the plaintiff testified that he observed a definite sinking in the ground where the new sewer had been laid. In February, 1960, he complained to the Board, which dispatched a work crew to fill the depressions around the sewer line. Several months later, the soil in the area again *245 •subsided and the Sewerage and Water Board again filled the depressions with riv■er sand.
From this time until May, 1962, the plaintiff observed only small “bad spots” following heavy rains, and he did not feel constrained to have the Sewerage and Water Board return to engage in any additional filling operations.
In April, 1962, the plaintiff and his family departed from New Orleans on a business trip and did not return to his home until September of that year. He then noticed large cracks in the brick veneer surface of his residence, together with cracks in the plaster in the interior thereof. In addition thereto, he later learned that the flooring of the house nearest to the ditch had sunk one and one half inches as compared to a sinkage of one half inch in the ■other areas of the house.
Granite State Insurance Co. contends that the damage sustained to the plaintiff’s residence did not occur in 1962, and predicates its conviction on photographs taken in 1960 by the Sewerage and Water Board revealing the presence of some cracks in the brick veneer at that time.
On the other hand, the plaintiff concedes that some minor cracks did exist prior to September of 1962, the date when he contends that the major damage was discovered by him upon his return to his home. His testimony is substantiated to a large extent by the testimony of a soil expert, offered by Aetna Casualty Insurance Company, who related that in his opinion the damage to the plaintiff’s home was caused by a severe drought which occurred in New Orleans during the summer of 1962. According to this expert, the effect of an abrupt drop in the water table in the area of the plaintiff’s home probably caused a rather precipitous sinkage thereof during his absence. However, this expert also asserted that part of the damage to the plaintiff’s home could have been caused by the trench excavated by the Sewerage and Water Board.
All of the defendant insurers have offered several defenses to the plaintiff’s suit, and each has endeavored to prove that the loss, if any was incurred in conformity with their respective contracts, was sustained during the other’s policy period. However, the most important issue in the case, urged upon us by all three insurance companies, is whether the homeowners’ contract of insurance issued by them afforded coverage to the plaintiff for the damage which was incurred by his residence.
Each policy affords “all risk” coverage, with certain enumerated exclusions. The exclusion of pertinence herein provides that the policy does not insure against loss:
“by termites or other insects; wear and tear; deterioration; smog; smoke from agricultural smudging or industrial operations; rust; wet or dry rot; mould; mechanical breakdown; settling, cracking, shrinkage, or expansion of pavements, foundations, walls, floors, or ceilings; unless loss by fire, smoke (other than smoke from agricultural smudging or industrial operations), explosion, landslide, collapse of buildings, water damage, or glass breakage ensues, and this Company shall then be liable only for such ensuing loss;” (Italics ours)
The plaintiff has insisted from the inception of this litigation that the damage sustained to his residence constitutes a “collapse” thereof, and consequently it does not fall within the terms of the above exclusion. On the other hand, the defendant insurers assert that the plaintiff’s damage was incurred as the result of “settling, cracking, shrinkage, or expansion of pavements, foundations, walls, floors, or ceilings”. A cursory reading of the exclusion reveals that damage from these causes is not covered by the contract of insurance unless a collapse of the building ensues.
Therefore, the pertinent question posed for our consideration, as we have said, is whether the damage incurred by the plaintiff’s residence constitutes a collapse there *246 of so as to extricate him from the exclusion contained in all three policies.
The plaintiff relies on the rationale emanating from Anderson v. Indiana Lumbermens Mutual Insurance Company[2] as authority for the conclusion that the damages sustained by him constitute a collapse of his home. The Anderson case was decided on an exception of no cause of action, in which the petition alleged the following facts:
“that during August, 1959, a crack appeared in the wall of the house and since that time the crack has become larger and now extends into the ceiling of the living room and cracks have appeared in the wall, at every window and door in the house, and the door frames are out of square with the doors; that the concrete slab forming the base of the floor of the house and the foundation is broken, cracked, fallen and uneven, and the tile flooring between the kitchen and back bedroom has broken apart; that on the exterior the two rear corners are lower than the center portion of the rear wall, and cracks and separations extend upward in the brick from the concrete slab to the roof lines on all sides of the house; and that due to the collapse of said building, it will be necessary to remove the brick from the exterior, to jack up the roof, to replace the concrete slab and floors, realign the joists, rafters and sills, replace the sheet rock, and repaint the exterior and interior of the building. Further, it is alleged that petitioner’s lot slopes downward from the street line to the rear; that the concrete slab is on a type of clay soil which is subject to seasonable changes, particularly extreme dry and extreme wet periods; that the expansion and contraction of the soil has caused the cracking, breaking and falling of the concrete slab with the falling, cracking, breaking and unequal settlement of the building, all', of which is of such a nature as to materially impair the basic structural integrity of the building; and that said, loss is covered by the policy.”
The organ for the court asserted that the petition stated a cause of action, and remanded the case to the district court for-further proceedings, and in conjunction, therewith expressed the opinion, as we understand it, that a building has collapsed, within the meaning of a policy if the settling, falling, cracking, bulging or breaking-of the insured building or any part thereof' materially impaired the basic structure or.substantial integrity of the building.
In this case, however, the evidence clearly indicates that the damage incurred was; not such as to impair the structural integrity of the house. It is clear that cracks have-appeared in the brick veneer skin and in the-plaster interior of the house, and that the-floor in the area of the alleged collapse-settled one inch more than the other areas, of the house. None of these defects, however, can be said to affect the structural integrity of the house, since neither the brick veneer outer wall nor the plastered interior perform any weight bearing function. In-addition thereto, the difference in the floor-level is to be expected from the usual settling of a house which is located in this general area.
Counsel for the plaintiff emphasizes the-iact that the record contains certain testimony indicating that the cement footing of the foundation may have cracked on the corner of the house nearest the Sewerage- and Water Board excavation. The contractor who constructed the house related, that the foundation is of a “spread footing” nature. That is, the foundation consists of a strip of concrete approximately two feet in width running around the entire perimeter of the house and under the weight bearing walls. This cement strip was placed ap *247 proximately two feet below the level of the ground, and the weight bearing pillars were placed thereon at intervals. The contractor testified that in his opinion part of this footing had cracked, but he was unable to assert this with any degree of probable or reasonable certainty since he did not go under the house and dig down to the cement footing.
The consulting architect who made the inspection and prepared plans for the repair ■ of the residence also testified that in his ■opinion the sinkage could have occurred by ■the cracking of the cement footing.
The most enlightening testimony, however, on this point was given inadvertently by the soil expert called on behalf of Aetna. He testified that the damage occurred as a result of the settling of the land under the house which resulted from a drop in the local water table. He thus indicated that ■damage to the plaintiff’s house was incurred as a result of the settling of the soil under -the foundation.
The whole tenor of the evidence adduced herein leads us to the inevitable opinion that the damage incurred by the plaintiff’s residence did not constitute a collapse, but is a loss occasioned by settling, cracking or expansion of pavements, foundations, walls, floors, or ceilings in conformity with the -policy exclusion. It should be pointed out that the organ for the Court of Appeal in the Anderson case relied upon the rationale • emanating from Jenkins v. United States Fire Insurance Company,[3] which incidentally expressed the minority view, as authority for its opinion that a building had collapsed within the meaning of the policy if the settling, falling, cracking, bulging or breaking of the insured building or any part •thereof materially impaired the basic structure or substantial integrity of the building. 'However, the policy involved in the Anderson and Jenkins cases did not contain the .specific exclusion which appears in this ■plaintiff’s policy. Thus, to this very significant extent, these cases do not militate against the conclusion reached herein.
For the foregoing reasons the judgment of the lower court is reversed, and judgment is hereby rendered dismissing the plaintiff’s suit at his cost
Reversed and rendered.

. Wo will not elucidate upon the mechanics of the appeal. Suffice it to say that all of the original defendants are before this court.

. 127 So.2d 304 (La.App.1961). (Second circuit). It will be observed tliat the policy exclusion which exists in the present ease did not appear in the policy of insurance involved in the Anderson case.

. 185 Kan. 665, 347 P.2d 417 (1959).