454 So.2d 328 (1984)
Robert G. NIDA, Plaintiff-Appellant,
v.
STATE FARM FIRE & CASUALTY COMPANY, Defendant-Appellee.
No. 83-765.
Court of Appeal of Louisiana, Third Circuit.
July 17, 1984.
Writ Denied October 26, 1984.
*329 Robert G. Nida, pro se.
Dee D. Drell of Gold, Little, Simon, Wiems & Bruser, Alexandria, for plaintiff-appellant.
Gist, Methvin, Hughes & Munsterman, DeWitt T. Methvin, Jr., Alexandria, for defendant-appellee.
Before CUTRER, DOUCET and YELVERTON, JJ.
DOUCET, Judge.
The issue presented in this appeal is whether plaintiff's insurance covered damage to his home caused by the condition of the soil beneath the foundation where the policy issued by defendant insurance company insured against loss caused by "collapse" but excluded losses resulting directly or indirectly from "earth movement". From an adverse judgment, plaintiff appeals.
The trial judge assigned written reasons for judgment which we incorporate hereinbelow:
"This is a suit for benefits under a homeowner's insurance policy. The plaintiff, Robert G. Nida, is the owner of the home in question. The defendant, State Farm Fire and Casualty Company, is the homeowner's insurer. The stipulated facts show that the concrete slab foundation of plaintiff's home cracked due to movement up and down of the earth underneath. The earth movement was caused by the shrinkage during dry weather and the expansion during wet weather of the "Moreland Clay" soil on which the house was built. Plaintiff contends the damage to his home, which consists of the cracked foundation, cracking of exterior and interior walls, doors sticking, wallpaper buckling, etc. are covered by his policy. The defendant contends the damages sustained are excluded by the provisions of the policy.
"There is no dispute as to the facts. They were stipulated, including the fact that the costs to repair the damages to plaintiff's home is $16,500.00. The issue is whether the loss is covered under the policy, and if so, whether State Farm's refusal to pay was arbitrary, capricious or without probable cause so as to entitle plaintiff to penalties and attorney's fees.
"The facts show that the home was built in the city of Alexandria in 1972. Nida purchased the home in 1979 for a price of $46,500.00. Since Nida's purchase, the home has been insured by defendant under a homeowner's policy.
"On October 19, 1982, plaintiff filed a claim with defendant stating that the concrete slab of the building had cracked and that the unequal settlement of the structure had cracked the exterior and interior walls to such an extent as to materially impair basic structural intregrity (sic) of the building. Plaintiff stated these problems were associated with the fact that the house was built on a highly plastic clay soil which expands and contracts during wet and dry periods, thereby placing great stress on the foundation.
"Following receipt of plaintiff's October 19, 1982 demand, the defendant insurer employed Mr. Philip Beard, a consulting engineer, to determine the extent and the cause of the damage to plaintiff's home. In his report dated November 19, 1982, Mr. Beard states the following:
`SOIL STRUCTURE: According to the U.S. Department of Agriculture, Soil Conservation Service, the soil type under and around residence is probably Moreland. A general location map and list of soil properties of each of the soil types is included herein courtesy of the U.S. Department of Agriculture.
`DISCUSSION: D.1 Soil Mechanics: The type clay under residence as indicated by *330 subsurface investigation is a highly `active' soil. This means that soil is subject to volume changes caused from fluctuations in the natural in-place moisture content. Evaporative loss of soil moisture during dry seasons when average rainfall is low will result in swelling. Alternate shrink/swell conditions, or extreme shrinkage or swelling acting differentially can cause serious problems to a foundation system if the foundation or subgrade is not prepared to inhibit or absorb the resulting movement. Large trees in close proximity to foundation can seriously aggravate and/or accelerate shrinkage under perimeter beams due to transpiration.
`Desiccation shrinkage can occur in active clays or poorly compacted fills from 5 to 10 feet especially under the aggravated action of tree roots. Depending on the soil characteristics, this could result in long term differential settlement of 3 to 6 inches. The best foundation system in active clays either isolates the structure from the soil movement or minimizes the soil moisture loss/gain to an acceptable depth, usually 5 feet or greater.
`D.1.1 All cracking noted herein in exterior walls and interior finishes appears to be the result of differential settlement caused from soil desiccation and shrink/swell under perimeter of foundation.
`CONCLUSION: Cracking and settlement noted herein is the result of active soil shrinkage under the foundation system. The structure can be expected to continue to experience differential settlement from desiccation and/or shrink/swell.
`RECOMMENDATIONS: The north exterior wall of carport has rotated outward due to severe footing rotation. Immediate shoring or underpinning should be performed to preclude a potentially dangerous condition. A sudden severe impact to the subject wall could possibly cause the brick veneer to collapse.'
In his deposition, Mr. Beard explained how the foundation should have been constructed on this type of soil:
`Q. All right. Now, if the soil had been properly prepared at the time of the original construction, what would have been done to avoid this situation at this time?
`A. There are two options that are generally exercised for this type of soil. Option No. 1 requires the actual digging out of at least 4 or 5 feet of the very bad soil and wasting it and then replacing it with a very stable soil that's not subject to shrink-swell. The Option No. 2 requires the beefing up of the foundation. By that, I mean very deep, heavily reinforced exterior concrete beams. It becomes a matter of economics as to which option is generally exercised.'
"The insurance policy at issue provides in pertinent part:
`SECTION IEXCLUSIONS
We do not cover loss resulting directly or indirectly from: 2. Earth Movement. * *'
"In support of his argument that the above quoted exclusion does not apply in the present case, plaintiff sites (sic) Anderson v. Indiana Lumbermen's Mutual Insurance Company, 127 So.2d 304 (La.App. 2nd Cir.1961), writ denied (sic). In that case the trial court sustained an exception of no cause of action where the plaintiff alleged that the concrete slab foundation of his home cracked as a result of the expansion and contraction during wet and dry periods of the clay soil beneath. The policy excluded `loss caused directly or indirectly by earthquake, or other earth movements except land slides (sic);' The Court of Appeal reversed, applying the doctrine of `ejusdem generis', which states that where general words follow an ennumeration (sic) of specific terms, the general words must be construed as meaning the same general kind or class as those included within the specific terms. Under this rule, the Court of Appeal held that the general term "other earth movements" must be construed as meaning the same general kind or class of occurrances (sic) as the specific term *331 "earthquake", and that the expansion and contraction of the clay soil during alternating wet and dry seasons was not of the same general kind or class as an earthquake. The Court concluded the loss was not excluded.
"In the present case, the plaintiff has cited several cases from other jurisdictions which have applied the doctrine of `ejusdem generis' to similar policy provisions.
"In the present case the rule of `ejusdem generis' can have no application. Although the words `earth movement' are general, there are no words of specific meaning with which they must be construed to limit their meaning to a particular kind or class of incident.
"In the present case, the uncontradicted evidence shows that the cause of plaintiff's loss was earth movement, that is the rise and fall of the earth underneath plaintiff's home due to the expansion and contraction of the clay soil in alternating wet and dry seasons. The foundation of the home was not constructed to withstand this movement of the earth which occurs in this area of Rapides Parish. It was simply a defect in the construction of the foundation.
"Having found that coverage was excluded under the provision of the policy which excludes `earth movement', it is unnecessary for the Court to discuss the other issues discussed by counsel respectively in their briefs. Of course, it also necessarily follows that the defendants are not liable for penalties and attorney's fees."
From that judgment plaintiff has appealed, assigning as error the trial court's finding that the "earth movement" exclusion in the policy excluded coverage of plaintiff's loss. Alternatively, plaintiff claims coverage under other provisions of the policy.
As noted by both parties, the jurisprudence is divided as to the meaning ascribed to both the term "collapse" and "earth movement". Seee.g.Anno., Insurance Coverage"Collapse of Building", 71 ALR 3d 1072; and Anno., Insurance Earth Movement or Earthquake, 44 ALR 3d 1316. The policy herein insures for all risks of physical loss to the property except for loss caused by certain described risks including "deterioration; inherent vice; latent defect; settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs, or ceilings."
Although settling is not defined in the policy, it does state that "collapse" does not include settling, cracking, shrinking, bulging or expansion." In addition, there is the aforementioned clause excluding losses resulting directly or indirectly from earth movement.
For many years the standard form of fire insurance contained a clause providing that if the insured building or any part thereof should fall, except as a result of fire, all insurance on the building should immediately cease. In approximately 1954, insurers began issuing "all risk" (not all loss) policies and extended coverage endorsements providing for loss caused by "collapse" of the insured building. Two lines of cases developed therefrom, the first view being that "collapse" is an unambiguous term which denotes a falling in, loss of shape, or reduction to flattened form or rubble and therefore there was no coverage under the policy unless that happened. The second view, a more liberal view, adopted the view that there could be a "collapse" even though there has been no falling, tumbling down, or near total destruction if the settling, cracking, bulging, or breaking of the insured building or any part thereof was in such a manner as to materially impair its basic structure or substantial integrity. Under this latter view, the courts held that the insurance coverage did apply although there was no total falling down of the building or any part thereof. Thereafter, insurers amended their policies so as to exclude from "collapse" coverage losses caused by the settling, cracking, shrinking, bulging or expansion of buildings or any part thereof. Anno., Insurance Coverage"Collapse" of Building, supra.
As is illustrated in the courts of Kansas, this second revision of the policy language *332 caused some turnaround in the liberal view. Initially, the Supreme Court of Kansas in the case of Jenkins v. United States Fire Insurance Company, 185 Kan. 665, 347 P.2d 417 (1959), under the earlier collapse policy language with no restrictions or definitions, had taken the liberal view, that if the building was materially impaired in its basic structure or substantial integrity, it had collapsed. The court noted, inter alia, that while the "collapse" clause was susceptible of more than one construction, the clause was properly to be interpreted as loss brought about by unusual and extraordinary circumstances which the parties could not normally expect or foresee on the date of "settling" and other defects. After the policy language was changed to exclude loss from settling, cracking, shrinkage, building or expansion, the Supreme Court of Kansas in Krug v. Millers Mutual Insurance Association, 209 Ka. 111, 495 P.2d 949 (1972) wherein loss was caused by water leakage, distinguished the Jenkins case on the grounds that "collapse" was not qualified in any way in the original case whereas it was qualified in the policy language of the Krug case. Id. The court therein specifically noted that the insured could not recover under the policy where, inter alia, settling, bulging, or expansion was excluded. The court rejected plaintiff's contention that the exclusionary phrases referred only to normal settling and phrasing.
The leading Louisiana case in connection with construction of "collapse" and "earth movement" is the case of Anderson v. Indiana Lumbermens Mutual Insurance Company, 127 So.2d 304 (La.App.2d 1961), which was decided under the earlier policy provisions which provided coverage for collapse but without defining or restricting the coverage at all and excluding coverage "caused directly or indirectly by earthquakes or other earth movements, except landslides." In Anderson, the plaintiff's loss was also due to clay soil swelling. The court gave a liberal interpretation to the word "collapse" and with reference to the exclusion applied the maxim "ejusdem generis" to restrict the interpretation of "other earth movement" where the same clause included exclusion of loss by "earthquake".
Subsequently, in Samuel v. Sewerage and Water Board of New Orleans, 181 So.2d 243, 12 ALR 2d 611, 16 ALR 2d 393, (La.App. 4th Cir.1965), writ ref. 182 So.2d 660 (1966) the court considered the plaintiff's claim for coverage under a policy which had been revised from the language of the policy in Anderson and which contained the restriction against coverage for losses resulting from settling, cracking, shrinkage or expansion of pavements, foundations, walls, floors, or ceilings. The court in Samuels distinguished Anderson in the following manner:
"The whole tenor of the evidence adduced herein leads us to the inevitable opinion that the damage incurred by the plaintiff's residence did not constitute a collapse, but is a loss occasioned by settling, cracking or expansion of pavements, foundations, walls, floors, or ceilings in conformity with the policy exclusion. It should be pointed out that the organ for the Court of Appeal in the Anderson case relied upon the rationale emanating from Jenkins v. United States Fire Insurance Company, which incidentally expressed the minority view, as authority for its opinion that a building had collapsed within the meaning of the policy of the settling, falling, cracking, bulging or breaking of the insured building or any part thereof materially impaired the basic structure or substantial integrity of the building. However, the policy involved in the Anderson and Jenkins cases did not contain the specific exclusion which appears in this plaintiff's policy. Thus, to this very significant extent, these cases do not militate against the conclusion reached herein." (footnotes omitted)
Considering the policy before us, it is clear we need not make a determination as to whether or not the plaintiff's home has sustained a "collapse" per se, rather the issue is whether plaintiff's loss was caused by inherent vice; latent defects; settling, cracking, shrinking, bulging, or expansion *333 of pavements, patios, foundations, walls, floors, roofs or ceilings or earth movement and whether the policy is clear in excluding such losses.
The term "earth movement" is not defined in the policy, therefore "it must be interpreted in its ordinary sense as used and understood by laymen, rather than by technicians and scientists." Schmieder v. State Farm Fire & Casualty Company, 339 So.2d 390, 392 (La.App. 1st Cir.1976), writ den. 341 So.2d 895 (La.1977).
Any ambiguity in an instrument is resolved against the draftsman. Pique v. Saia, 450 So.2d 654 (La.1984) La.C.C. arts. 1957, 1958; Bond v. Commercial Union Assur. Co., 407 So.2d 401 (La.1981); Benton Casing Service, Inc. v. Avemco, Ins., 379 So.2d 225 (La.1979); Credeur v. Luke, 368 So.2d 1030 (La.1979). This canon of construction is particularly applicable when interpreting an exclusion in a comprehensive insurance policy. Petrol Industries, Inc. v. Gearhart-Owen Industries, Inc., 424 So.2d 1059 (La.App. 2nd Cir.1982). Nevertheless, a policy of insurance, like other legal contracts, becomes the law between the parties and the words of the contract are to be understood in the common and usual signification. Vidrine v. Southern Farm Bureau Casualty Ins. Co., 247 So.2d 660 (La.App. 3rd Cir.1971); Oncale v. Aetna Casualty & Surety Co., 417 So.2d 471 (La.App. 1st Cir.1982).
In Stewart v. Preferred Fire Ins. Co., 206 Kan. 247, 477 P.2d 966 (1970), a provision excluding coverage "for loss caused by, resulting from, contributed to or aggravated by any earth movement, including but not limited to earthquake, landslide, mud flow, earth sinking, rising or shifting", was held to preclude recovery for the collapse of a building, which occurred when the supporting soil under and around the foundation gave way and it sank into a pre-existing cavern or shaft area of a mining operation. The court opined that the exclusionary clause was not ambiguous, since the term "earth movement" taken in its plain, ordinary, and popular sense means any movement of the earth, whether it be up, down, or sideways, the words "earthquake, landslide, mudflow", and the term "earth sinking, rising or shifting", all referring to verticle or horizontal movements of earth or soil.
In Wisconsin Builders, Inc. v. General Insurance Company of America, 65 Wis.2d 91, 221 N.W.2d 832 (1974), the Supreme Court of Wisconsin stated: "The majority of the courts which have considered this particular exclusion have found it to be ambiguous and apply the doctrine of ejusdem generis to limit the definition of `earth movement'." However, the clause in Wisconsin Builders excluded "earth movement, including but not limited to earthquake, volcanic eruption, landslide, mudflow, earth sinking, earth rising or shifting..." thus application of the rule of "ejusdem generis" was proper. Accord: Government Employees Ins. Co. v. DeJames, 256 Md. 717, 261 A.2d 747 (1970); Barash v. Ins. Co. of North America, 114 Misc.2d 325, 451 N.Y.S.2d 603 (1982).
We agree with the trial judge that the rule of "ejusdem generis" is inapplicable as applied to the term "earth movement" and, furthermore, that the term is free from ambiguity.
Appellant's alternate contention for coverage is the alleged ambiguity in the "settling" and "latent defect" exclusions.
The term "settling" is not defined in the policy. Appellant suggests we adopt the definition employed in Barash v. Insurance Company of North America, supra, wherein the homeowners sued pursuant to their "all risk" policy for damage caused to their home when unsuitable fill material underlying their home deteriorated, creating a void which precipitated the collapse of the basement slab. The insurance company resisted the claim, invoking a policy exclusion for damage "caused by settling, shrinking, or expansion in foundations, walls, floors or ceilings." In Barash, the court noted, "For the defendant to derive any benefit from the exclusionary clause, it was obliged to show that (1) it would be unreasonable for the average man reading *334 the policy to give it the construction urged by the plaintiff, and (2) that its own construction was the only one that fairly could be placed on the policy." The court further held that the term "settling", construed in its ordinary and popular sense, has a "general meaning of a gradual sinking of a building." As applied to houses, settling has a different connotation, that of a building initially coming to rest after construction. The court held that "the implication given to the average insurance buyer is that what is excluded is the normal, gradual re-adjustment of the building materials when it occurs in foundations, walls, floors or ceilings" distinguishing between settling "of foundations" and settling "in foundations".
However, as noted at 71 A.L.R.3d 1100, "property insurance policies extending coverage to direct loss caused by `collapse' of the insured building but excluding loss from settling, cracking, bulging, and the like, have generally been held not to encompass damage to walls, ceilings, and foundations which have in fact settled, cracked, or bulged."
In LaSalle Nat. Bank v. American Ins. Co., 14 Ill.App.3d 1027, 303 N.E.2d 770 (1973), the court reversed a judgment for the insured in an action to recover for loss and damage to a one-story commercial building, on the ground that the damage had resulted from "settling", which was excluded from coverage, and not from a "collapse". The court's ruling for the insurer was primarily based on: (1) the uncontested results of soil borings, which revealed that the middle layers of the building's supporting ground were soft and very moisture-laden, so that, in terms of soil mechanics, the building had an unstable base, and (2) the testimony of an expert in soil mechanics and foundation engineering that based on the test results and his personal examination of the premises, the damage was, in his opinion, caused by a settling of the ground level resulting from a consolidation of the middle layers of the supporting ground. Accord: Krug v. Miller's Mut. Ins. Assoc., supra; Williams v. State Farm Fire and Cas. Co., 514 S.W.2d 856, 71 A.L.R.3rd 1065 (Mo.App.1974); Graffeo v. U.S. Fidelity and Guaranty Co., 20 A.D.2d 643, 246 N.Y.S.2d 258 (1964).
Sabella v. Wisler, 59 Cal.2d 21, 27 Cal. Rptr. 689, 377 P.2d 889 (1963) involved an action under an "all physical loss" policy which specifically excluded coverage for loss by "settling", among other things, "unless loss by collapse ensues," and damage resulted from leakage from a ruptured sewerline into soil which had been insufficiently compacted by the builder, causing the house to settle to such uneven elevations that its foundation and walls cracked, its floors became no longer level, and certain of its windows and doors could no longer be opened or closed. The court noted that the policy excluded with sufficient clarity all loss by settling, whether gradual or rapid, unless collapse of the dwelling ensued, and that since the house remained usable and continued to be occupied, it could not be said that any "collapse" had occurred.
Philip Beard testified that the term "differential settlement" which he applied to the conditions at plaintiff's residence is distinguishable from ordinary settlement which occurs in almost all homes, and which can result in some minor cosmetic cracking. Beard's testimony indicates that the house has not experienced a gradual sinking, but rather sustained and continues to sustain a situation where the structure in fact rises and recedes. While Barash is only persuasive authority, we find it distinguishable from the present case as there has been no "collapse" as the term is commonly employed, and, furthermore, we find no ambiguity in the term "settlement" as applied to the facts herein. From our consideration of the authorities, we think that the language in question is neither ambiguous nor unclear. The policy specifically defined "collapse" as not including "settling".
State Farm in the trial court further claimed that the damage to appellant's home was caused by a "latent defect" resulting *335 from an improperly designed foundation. Plaintiff maintains that these terms are themselves technical in nature, and in light of the lack of definition within the policy, must be said to be ambiguous.
The term "latent defect" was defined in Walker v. Travelers Indemnity Company, 289 So.2d 864 (La.App. 4th Cir.1974) as follows:
"A latent defect is a hidden defect and generally involves the material out of which the thing is constructed." Ross v. Tynes, et al., 14 So.2d 80, 83 (Orl.La.App. 1943).
This definition was later applied in Schon v. James, 28 So.2d 531 (Orl.La.App.1946), and since has been sanctioned by other cases in the jurisprudence of Louisiana, none of which involved a marine loss. Our examination of the jurisprudence of other states and federal cases dealing with maritime law reveals that our definition of latent defect that has its origin in Ross v. Tynes, et al., supra, is incomplete.
A latent defect is defined in Black's Law Dictionary, 4th Ed., as a defect which a reasonably careful inspection would not reveal or a defect that could not have been discovered by any known or customary test.
A latent defect is a defect which is not apparent and which would not be discoverable upon reasonable inspection. Zillah Transportation Co. v. Aetna Insurance Co., 175 Minn. 398, 221 N.W. 529 (1928); Reisman v. New Hampshire Fire Insurance Company, 312 F.2d 17 (5th Cir.1963).
Latent defect means a defect not manifest, but hidden or concealed and not visible or apparent; a defect hidden from knowledge as well as from sight, and specifically a defect which reasonable inspection will not reveal. Glens Fall Ins. Co. v. Long, 195 Va. 177, 77 S.E.2d 457 (1953). See also Reliance Insurance Company v. Brickenkamp, 147 So.2d 200 (Fla.App.1963); Watson v. Providence Washington Ins. Co., 106 F.Supp. 244, appeal dismissed, 4 Cir., 201 F.2d 736.
The court in Walker went on to conclude that a proper definition of latent defect is "a defect that is hidden or concealed from knowledge as well as from sight and which a reasonable customary inspection would not reveal." id. at 870. We find that the vice in the construction of the foundation falls within this definition and such a construction is reasonable as concerns both parties. As noted by the trial judge, in reflecting on the testimony of Mr. Beard, "the foundation of the home was not constructed to withstand this movement of the earth which occurs in this area..." The defendant-insurer simply was not a guarantor of the constructor's building performance.
In conclusion, we note that the policy in Anderson addressed "earth movement" and "landslides" in the same clause. Accordingly the court properly applied the rule of "ejusdem generis".
As the basic cause of plaintiff's loss was the improper preparation of the foundation upon which the plaintiff's house was built, and the proximate cause of plaintiff's loss was the earth movement and settling resulting in the damage of which the plaintiff complains, and the policy is free from ambiguity, the trial judge properly dismissed plaintiff's demands.
Accordingly, the judgment appealed is affirmed at appellant's cost.
AFFIRMED.
YELVERTON, J., concurs and assigns written reasons.
YELVERTON, Judge, concurring.
I concur in the result because the weight of authority, including our own Samuel v. Sewerage & Water Board of New Orleans, 181 So.2d 243 (La.App. 4th Cir.1965), writ refused 183 So.2d 651, supports the view that this was a loss occasioned by settling and therefore it is excluded by the clear policy terms.
I do not agree that the term "earth movement" clearly includes the periodic *336 contraction and swelling of soil. The term ought to be restricted at least to cases where there has been a relocation of earth, which is what "movement" implies. The earth under the appellant's house has not moved. It is still in the same place. The term can reasonably be interpreted not to include swelling and contraction of soil. Because it appears in an exclusion clause, it should be given this liberal interpretation.
The writer also has trouble with the idea that the nature of Westmoreland clay constitutes a "latent defect" as that term is used in the policy, as another cause excepted from coverage.