488 So.2d 1252 (1986)
Richard SHIELDS and Mary Shields
v.
PENNSYLVANIA GENERAL INSURANCE COMPANY.
No. CA-4895.
Court of Appeal of Louisiana, Fourth Circuit.
May 12, 1986.
Thomas M. Richard, Hailey, McNamara, Hall, Larmann & Papale, Metairie, for appellants.
Matt Greenbaum, and Schoemann & Associates, New Orleans, for appellee.
Before CIACCIO and LOBRANO, JJ.
LOBRANO, Judge.
The issue presented for our review in this appeal is whether plaintiffs' homeowner's insurance covers damage to their property as a result of a "collapse" of the front portion of their home. The trial court held that there was coverage and we affirm.
On or about October 1, 1983, plaintiff noticed that the front corner of his home had dropped, the window casement had separated from the wall, and the bricks in *1253 this area of his home had separated from the window frame. Robert Anderson, a consulting civil engineer, retained by plaintiff, conducted tests on the situation that had occurred and concluded that external forces, either drainage or evaporation had caused consolidation of the soil. This resulted in the soil being lowered away from the slab which, in turn caused the front of the house to collapse. He opined:
"Evidently there has been a consolidation and subsequent shrinkage of the soil under the left front corner of the residence. The reinforcing bars and welded wire fabric present in the slab cantilevered over the area of nonsupport. As a result, the structural ability of the slab was exceeded. At this point, a collapse or give away was experienced which resulted in the slab recontacting the ground at the new consolidation level."
Plaintiff notified his homeowners' insurer, Pennsylvania General Insurance Company (defendant) of the damages. They denied coverage, and this litigation followed.
Trial of the matter was by stipulated testimony and deposition. The structural repairs cost plaintiff $5,600.00 plus $200.00 for engineering fees. The trial court found that the damage was a result of a "collapse not otherwise excluded" in the policy. Plaintiff was awarded $5,800.00.
In making our determination in this matter it is necessary to reproduce the pertinent provisions exactly as they appear in the subject policy.

PERILS INSURED AGAINST
This policy insures under:
"COVERAGE A-DWELLING and COVERAGE B-APPURTENANT STRUCTURES against all risks of physical loss to the property covered (and under COVERAGE D, ADDITIONAL LIVING EXPENSE resulting from such loss), except as otherwise excluded or limited.
COVERAGE C-UNSCHEDULED PERSONAL PROPERTY against direct loss to the property covered by the following perils as defined and limited, except as otherwise excluded.
* * * * * *
13. Collapse of buildings or any part thereof, but collapse does not include settling, cracking, shrinkage, bulging or expansion.
* * * * * *
ADDITIONAL EXCLUSIONS
This policy does not insure against loss: Under Coverages A, B and C (and under Coverage D-Additional Living Expense resulting from such loss):
* * * * * *
2. caused by, resulting from, contributed to or aggravated by any earth movement, including but not limited to earthquake, volcanic eruption, landslide, mudflow, earth sinking, rising or shifting; unless loss by fire, explosion or breakage of glass constituting a part of the building(s) covered hereunder, including glass in storm doors and storm windows, ensues, and this Company shall then be liable only for such ensuing loss, but this exclusion does not apply to loss by theft;
* * * * * *
Under Coverages A and B (and under Coverage D-Additional Living Expense resulting from such loss):
1. by ... settling, cracking, shrinkage, building or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings, ... unless loss by ... collapse of a building, glass breakage or water not otherwise excluded ensues, then this policy shall cover only such ensuing loss. If loss by water not otherwise excluded ensues, this policy shall also cover the cost of tearing out and replacing of any part of the building covered required to effect repairs...."[1]
An insurance policy is a contract between the insured and the insurer and has the effect of law between the parties. Lambert v. Mutual Life Insurance Company of New York, 431 So.2d 23 (La.App. 1st *1254 Cir.1983), writ denied, 438 So.2d 571 (La. 1983). Courts are bound to give legal effect to the terms of an insurance policy according to the true intent of the parties, and that intent is to be determined from the words on the contract when they are clear and explicit and lead to no absurd consequences. Miller v. Duthu, 470 So.2d 500 (La.App. 1st Cir.1985), writ denied, 474 So.2d 1310 (1985). Any exclusion from coverage in a policy must be clear and unmistakeable. If more than one interpretation of an exclusion is reasonable, the one affording coverage to the insured will be adopted. Stewart v. Louisiana Farm Bureau Mutual Insurance Co., 420 So.2d 1217 (La.App. 3rd Cir.1982). See also, Carney v. American Fire and Indemnity Co., 371 So.2d 815 (La.1979). It is well settled that any ambiguity in a policy of insurance is construed against the insurer and in favor of the insured. Miller v. Duthu, supra. The burden is on the insurer to prove the applicability of an exclusionary clause in a policy of insurance. Barber v. Best, 394 So.2d 779 (La.App. 4th Cir.1981).
Defendant argues that the trial court erred by concluding that the limiting definition of "collapse" as used in section 13 of the "Perils Insured Against" section applies only to Coverage "C" (Unscheduled Personal Property) rather than all coverages. We disagree. The policy, to say the least, is ambiguous and misleading on this point. The seventeen listed "Perils Insured Against" appear directly following the explanation of Coverage C. Furthermore that explanation of Coverage C specifically refers to "the following perils as defined and limited ..."
Defendant contends that "it is obvious" that the seventeen perils should apply to all coverages. However, that is not what a plain reading of the policy conveys. If defendant intended to apply those seventeen perils to all coverages it could have easily done so by reference as was done in Coverage C. We will not infer a meaning to a clause that would exclude coverage where a plain reading leads to the opposite result. We therefore agree with the trial court that the limiting definition of "collapse" applies only to Coverage C.
Having found that the term "collapse" was not defined or restricted by a policy definition, the trial court held that coverage was applicable by virtue of the terminology of the exclusion that pertains to Coverages A, B and D. (See, exclusion 1, under coverages A, B and D, supra). That provision excludes loss as a result of "... settling, cracking, shrinkage, bulging or expansion of pavements, paitos, foundation, walls, floors, roofs or ceilings ... unless loss by ... collapse of a building ... not otherwise excluded ensues, then this policy shall cover only such ensuing loss." The trial court determined that a collapse ensued which was not otherwise excluded.
Defendant argues that this finding is also error, citing Nida v. State Farm Fire and Casualty Co., 454 So.2d 328 (La.App. 3rd Cir.1984), writ denied, 458 So.2d 486, and Howard v. Commercial Union Insurance Co., 441 So.2d 466 (La.App. 2nd Cir. 1983).
In Nida, supra, the Court was faced with facts similar to those in the instant case. The plaintiff-homeowner sought recovery for damages to his home as a result of earth movement and settling. The policy in question afforded coverage for collapse, but specifically defined "collapse" as not including "settling". Id. at 334. The Court held that a collapse had not occurred within the policy definition, and that coverage was precluded because the damage was the result of earth movement and a latent defect in construction, both of which were unambiguous exclusions.
We distinguish Nida for several reasons. First, we have determined that the restrictive definition of "collapse" in the instant case applies only to coverage C, hence, unlike Nida, we have no clear policy definition of that term.
Second, there was no finding by the trial court in the instant case that a latent defect caused the damages. Although defendant argues that the "latent defect" exclusion in its policy should preclude coverage (as it did Nida,) defendant bears the *1255 burden of proving same. A proper definition of latent defect is "a defect which is hidden or concealed from knowledge as well as from sight and which a reasonable customary inspection would not reveal." Walker v. Travelers Indemnity Company, 289 So.2d 864 (La.App. 4th Cir.1974). The evidence shows plaintiff's home was built in the late 1940's or early 1950's. There is testimony by Anderson that due to the unique nature of the area, pilings were not necessary in residential construction over the last forty years. Although Anderson did state the collapse would probably not have occurred if pilings had been used in the foundation, we do not consider this sufficient proof of a defect. In Nida, supra, the trial court found "the foundation of the home was not constructed to withstand this movement of the earth which occurs in this area ..." Id. at 335. There is no evidence in the instant case to support a finding that there was "earth movement" in the area of plaintiff's home at the time it was built necessitating the use of pilings.
Third, we distinguish Nida because of the unambiguous exclusion in that case of "... loss resulting directly or indirectly from ... earth movement". Id. at 330. Although the Nida court wrestled with the definition of "earth movement" once it determined that plaintiff's damages were caused by earth movement, the exclusion clearly applied. In the instant case, however, we have two ambiguous exclusions. One provision excludes all coverages from loss "caused by ... any earth movement, including but not limited to ... earth sinking...." Another provision excludes Coverages A, B and D from loss "by ... settling, cracking, shrinkage, bulging or expansion of ... foundations, walls, floors, roofs or ceilings ... unless loss by ... collapse of a building ... not otherwise excluded ensues, then this policy shall cover only such ensuing loss." (emphasis added). Thus unlike Nida, we are confronted with two provisions one which excludes earth shrinkage loss without reservation, and another which excludes shrinkage loss unless a collapse ensues. An exclusion must be clear and unmistakeable, and if more than one interpretation is reasonable the one affording coverage should be adopted. Stewart v. Louisiana Farm Bureau Mutual Insurance Co., supra.
We also distinguish Howard v. Commercial Union Ins. Co., supra, because in that case the policy excluded from the definition of a collapse, settling, cracking, shrinking, bulging or expansion. Id. at 468. In the instant case, as previously noted, we have determined that the restrictive definition of "collapse" only applies to Coverage C.
We now turn to the question of whether the trial court was correct in finding that plaintiff's damages were the result of a collapse as used in the exclusionary provision quoted earlier in this opinion. We have reviewed Anderson v. Indiana Lumbermens Mutual Ins. Co., 127 So.2d 304 (La.App. 2nd Cir.1961), and Samuel v. Sewerage and Water Board of New Orleans, 181 So.2d 243 (La.App. 4th Cir.1965), writ refused 248 La. 1029, 183 So.2d 651 which have been cited by both parties. In Anderson, the Court reviewed various jurisprudence interpreting the meaning of "collapse" and concluded that the petition under review stated a cause of action for "collapse of a building". The reasoning of the court was predicated on the Kansas decision of Jenkins v. United States Fire Insurance Co., 185 Kan. 665, 347 P.2d 417 (1959) wherein collapse was construed to mean "... the settling, falling, cracking, bulging or breaking of the insured building or any part thereof in such a manner as to materially impair the basic structure or substantial integrity of the building ..." where such a condition is brought about by unusual or extraordinary circumstances.
In Samuel, supra, the Court relying on the Anderson interpretation held that the evidence clearly established that the damage incurred was not such as to impair the structural integrity of the house, and thus a "collapse" did not occur. While we do not quarrel with the result reached in Samuel, we do suggest that "collapse" includes more than an evaluation of the structural integrity of the building.
*1256 Collapse is defined by Webster's New World Dictionary to mean "to fall in together, cave in" or "to break down suddenly". Settling can be defined as "to sink" or "to become more dense by sinking". A reasonable interpretation of defendant's policy in the use of these two words is that they were intended to have opposite meanings. That is, the insurer would not cover loss due to sinking, but would insure against collapse.
Although damage to the structural integrity of a building can be caused by either a collapse or settling, we conclude that "collapse" means a sudden or relatively abrupt occurrence which causes serious structural damage, as opposed to damage caused by a gradual occurrence over an extended period of time, i.e. settling.
After reviewing the testimony of Robert Anderson, we conclude that plaintiffs' home sustained a collapse. The expert continuously concludes that the structural damage was instantaneous, rather than a gradual occurrence. He opined that it more than likely occurred overnight. His explanation of what occurred is as follows:
"Q. But, where I'm being thrown off is as this soil was lowered to this new level, the slab did not maintain its position but it lowered with the ...
A. No. The slab maintained its original position. If the slab did not maintain its original position and lowered with the soil, you would have had a gradual crack which would be opening up at the rate of about a sixteenth of an inch a year. You would see this gradual crack and you would repair it and paint it each time and it wouldn't be noticeable. This is very common in New Orleans. This is 90 per cent of the consolidation that we anticipate. But, what happened in this particular instance is that the soil is leaving due to this evaporation phenomena, and then all of a sudden one daylike the old analogy of the straw that broke the camel's backit reached the point that it could no longer leave and then it went up against the soil and then you get a big crack in the house rather than the gradual moving."
Clearly, the damage to plaintiff's home was due to a collapse.
Plaintiffs answered the appeal seeking an increase in damages, plus penalties and attorney fees.
The trial court awarded $5,800.00, the amount actually spent by plaintiffs in repairing the structural damage. This amount was proved by plaintiff's stipulated testimony, as well as the repair bills themselves. Plaintiff also claims he should have been awarded an additional $6,200.00 for future damages. The only evidence in the record before us to substantiate that claim is plaintiffs' stipulated testimony wherein he states "I received verbal estimates for future repairs to the house which have totalled $6,200.00." We conclude that the future loss was not sufficiently proved. Plaintiffs argue that the trial court should have reopened the case about one month after it was submitted to enable them to provide additional proof. We disagree. Litigation must end at some point. We will not disturb the trial court's ruling in this regard.
Lastly, plaintiff seeks penalties and attorney fees pursuant to La. R.S. 22:658. That statute is penal in nature and therefore must be strictly construed; penalties and attorney fees are not assessed unless it is clearly shown that the insurer was arbitrary, capricious and without probable cause in refusing to pay. McClain v. General Agents Ins. Co. of America, 438 So.2d 599 (La.App. 2nd Cir.1983), writ denied 442 So.2d 458. There is no error in the trial court's refusal to grant penalties and attorney fees.
For the above and foregoing reasons, the judgment of the lower court is affirmed, appellant to pay all costs of this appeal.
AFFIRMED.
NOTES
[1] The coverage we are concerned with in this appeal is Coverage A-Dwelling.