470 So.2d 500 (1985)
Paul MILLER
v.
Jackie L. DUTHU, et al.
No. CA 84 0456.
Court of Appeal of Louisiana, First Circuit.
May 29, 1985.
*501 T. Michael Landrum, Baton Rouge, for plaintiff-appellant Paul Miller.
James H. Morgan, III, Baton Rouge, for defendant-appellee St. Paul Fire & Marine Ins. Co.
Carey J. Guglielmo, Baton Rouge, for defendant-appellee Jackie L. Duthu.
Before COLE, CARTER and LANIER, JJ.
LANIER, Judge.
This litigation commenced as a suit for damages arising from a one car accident brought by the guest passenger in the vehicle, Paul Miller, against the driver, Jackie L. Duthu, and his insurer, State Farm Mutual Automobile Insurance Company (State Farm).[1] State Farm insured Duthu under two policies of insurance on two vehicles: (1) the accident vehicle, a 1979 Ford Pinto with coverage of $100,000/$300,000 for liability, $5,000 for medical payments and $100,000/$300,000 for uninsured/underinsured motorist (Pinto policy); and (2) a 1976 Buick with coverage of $25,000/$50,000 for liability, $1,000 for medical payments and $25,000/$50,000 for uninsured/underinsured motorist (Buick policy). State Farm initially filed an answer. Subsequently, State Farm paid Miller $5,000 in medical payments and $19,912.28 under the liability coverage under the Pinto policy. State Farm then deposited $88,219.53 into the registry of the court. This sum represented the balance of $80,087.72 remaining under the liability coverage of the Pinto policy and $8,131.81 in legal interest and court costs. Miller secured a court order which released to him the funds deposited.
Miller then filed a "motion for declaratory judgment" asserting he was also entitled to recover from State Farm under the uninsured/underinsured motorist coverage of the Pinto and Buick policies. After a hearing, the district court ruled Miller was not covered under the Buick policy but was covered under the Pinto policy and this portion of the claim was not subject to the "limits of liability" clause. State Farm filed a motion for a new trial contending it was error not to apply the "limits of liability" clause. After a hearing on the motion for a new trial, the district court ruled the Pinto policy did not provide uninsured/underinsured motorist coverage, the "limits of liability" clause would eliminate coverage even if it existed and the "limits of liability" clause is valid and in conformity with public policy in the factual posture of this case. Miller sought a new trial which was denied. This devolutive appeal followed.

FACTS
*502 Part IV of the Pinto policy[2] provides uninsured/underinsured motorist (UM) protection (coverage). An uninsured automobile is defined therein as follows:
"uninsured automobile" includes a trailer of any type and means:
(a) an automobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder or becomes insolvent within one year after such accident or
(b) a hit-and-run automobile;
but the term "uninsured automobile" shall not include:
(1) an insured automobile or an automobile furnished for the regular use of the named insured or a relative,
(2) an automobile or trailer owned or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law,
(3) an automobile or trailer owned by the United States of America, Canada, a state, a political subdivision of any such government or an agency of any of the foregoing,
(4) a land motor vehicle or trailer if operated on rails or crawler-treads or while located for use as a residence or premises and not as a vehicle, or
(5) a farm type tractor or equipment designed for use principally off public roads, except while actually upon public roads.
[Underscoring added].
Duthu's 1979 Ford Pinto is an "insured automobile" for purposes of excluding it from the definition of an uninsured automobile.
The "limits of liability" provision of the UM coverage provides as follows:
Limits of Liability. (a) The limit of liability for uninsured motorists coverage stated in the declarations as applicable to `each person' is the limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the declarations as applicable to `each accident' is the total limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident.
(b) Any amount payable under the terms of this Part because of bodily injury sustained in an accident by a person who is an insured under this Part shall be reduced by
(1) all sums paid on account of such bodily injury by or on behalf of (i) the owner or operator of the uninsured automobile and (ii) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury including all sums paid under Coverage A [Bodily injury liability under Part I], and
(2) the amount paid and the present value of all amounts payable on account of such bodily injury under any workmen's compensation law, disability benefits law or any similar law.
(c) Any payment made under this Part to or for any insured shall be applied in reduction of the amount of damages which he may be entitled to recover from any person insured under Coverage A.

*503 (d) The company shall not be obligated to pay under this Coverage that part of the damages which the insured may be entitled to recover from the owner or operator of an uninsured automobile which represents expenses for medical services paid or payable under Part II. [Expenses for medical services].
[Underscoring added].
Because Miller was a person occupying an "insured automobile", he is an "insured" for purposes of the "limits of liability" provision.
The Pinto policy has an amendment which provides, in pertinent part, as follows:
Nothing herein contained shall be held to alter, vary, waive or extend any of the terms, conditions, agreements or limitations of the undermentioned policy other than as stated below.
....
In consideration of the premium at which the policy is written, it is agreed that coverage U is amended by changing the term "uninsured automobile" to "uninsured motor vehicle or underinsured motor vehicle" except in the definition of "uninsured automobile" where the change is to "uninsured motor vehicle". It is further agreed that the following definition is added.
"underinsured motor vehicle" means an automobile with respect to the ownership, maintenance and use of which the sum of the limits of liability under all bodily injury liability bonds, insurance policies and any other security provided by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law, or any similar law or provided by the United States of America, Canada, a state, a political subdivision or agency of any such government applicable at the time of the accident is insufficient to satisfy the damages sustained by the insured to the extent that said damages exceed said limits of liability; but "underinsured motor vehicle" shall not include:
(1) an uninsured motor vehicle;
(2) a land motor vehicle or trailer, if operated on rails or crawler-treads or while located for use as a residence or premises and not as a vehicle; or
(3) a farm type tractor or equipment designed for use principally off public roads, except while actually upon public roads.
[Underscoring added].

UNDERINSURED MOTORIST COVERAGE
An insurance policy is a contract between the insured and the insurer and has the effect of law between the parties. La.C.C. art. 1901 [now La.C.C. art. 1983]; Lambert v. Mutual Life Insurance Company of New York, 431 So.2d 23 (La.App. 1st Cir.1983), writ denied, 438 So.2d 571 (La.1983). Courts are bound to give legal effect to the terms of an insurance policy according to the true intent of the parties, and that intent is to be determined from the words of the contract when they are clear and explicit and lead to no absurd consequences. La.C.C. art. 1945 [now La. C.C. arts. 2045 and 2046]. An ambiguity in a policy of insurance is construed against the insurer and in favor of the insured. La.C.C. art. 1958 [now La.C.C. art. 2056]; Remondet v. Reserve National Insurance Company, 433 So.2d 792 (La.App. 5th Cir. 1983), writ denied, 441 So.2d 216 (La.1983). In Landry v. Louisiana Hospital Service, Inc., 449 So.2d 584, 586 (La.App. 1st Cir. 1984), appears the following:
Any exclusion from coverage in an insurance policy must be clear and unmistakeable. If more than one interpretation of an exclusion is reasonable, the one affording coverage to the insured will be adopted. Stewart v. Louisiana Farm Bureau Mutual Insurance Company, 420 So.2d 1217 (La.App. 3rd Cir. 1982). The burden is on the insurer to prove the applicability of an exclusionary clause in a policy of insurance. Kling v. Collins, 407 So.2d 478 (La.App. 1st Cir. 1981); Barber v. Best, 394 So.2d 779 (La.App. 4th Cir.1981).
*504 Because the insured automobile (1979 Pinto) is excluded from the definition of an uninsured automobile, there is no UM coverage in that context. The validity of this exclusion has been upheld. Moore v. Brumfield, 459 So.2d 21 (La.App. 1st Cir.1984) and the cases cited therein. However, the insured automobile is not excluded from the definition of an underinsured automobile. Since Miller is an "insured" for purposes of UM coverage, the 1979 Pinto is an "insured automobile" for purposes of UM coverage and the "insured automobile" is not excluded from the definition of an underinsured automobile, there is UM coverage for Miller for damages caused by an underinsured host driver under Part IV of the Pinto policy.

APPLICABILITY AND VALIDITY OF LIMITS OF LIABILITY PROVISION
Miller contends the district court committed error by ruling the limits of liability clause was not against public policy in the factual context of this case. He argues that the purpose of underinsured motorist coverage is to promote full recovery of damages by innocent accident victims when the liability coverage of the tortfeasor is inadequate and the limits of liability clause unlawfully allows an insurer to reduce underinsured motorist coverage below that required by law.
In Nall v. State Farm Mutual Automobile Insurance Company, 406 So.2d 216 (La.1981), a guest passenger was injured in a two car collision caused solely by the negligence of the host driver. The guest passenger attempted to recover under both the liability and UM coverages of the insurance policy covering the host driver and vehicle. The policy excluded UM coverage on the host vehicle. The guest passenger argued this exclusion was against the public policy of the UM statute and invalid. The Louisiana Supreme Court ruled the exclusion was valid with the following rationale:
Although La.R.S. 22:1406(D)(2)(b) (as amended by Act 154 of 1974) includes within the definition of an uninsured motor vehicle a statutorily defined underinsured motor vehicle, this provision must be read in light of other pertinent provisions of our uninsured motorist statute and cannot be interpreted in isolation. Breaux v. Government Emp. Ins. Co., 369 So.2d 1335 (La.1979). One such provision is La.R.S. 22:1406(D)(1)(a) which requires insurance companies to offer coverage to their liability policy holders "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles." (Emphasis added.) In Breaux, in interpreting this provision, we stated:
A person insured under the uninsured motorist provision of a particular policy delivered or issued for delivery in this state with respect to a motor vehicle registered or principally garaged in this state must establish that he is legally entitled to recover damages from the owners or operators of uninsured or underinsured motor vehicles in order to obtain coverage thereunder. As to coverage under the uninsured motorist provisions of a particular policy, the statute thus contemplates two distinct motor vehicles: the motor vehicle with respect to which uninsured motorist coverage is issued and the `uninsured or underinsured' motor vehicle. In addition, as to each policy containing uninsured motorist coverage, the statute distinguishes between the person insured under the policy in question and the owner or operator of the uninsured or underinsured motor vehicle.
We consider the intent and effect of La. R.S. 22:1406(D)(1)(a) to be clear. As stated in Breaux, this provision creates distinctions between (1) persons insured under a particular policy affording uninsured motorist coverage and owners or operators of uninsured or underinsured motor vehicles and (2) the motor vehicle with respect to which such insurance is issued and the uninsured and underinsured motor vehicle. It is thus apparent, *505 as held in Breaux, that our uninsured motorist statute does not mandate protection under the host driver's uninsured motorist coverage when the cause of the accident is the negligence of the host driver. We adhere to this interpretation. Hence, the clause in the GEICO policy which purports to deny uninsured motorist coverage to plaintiff in the instant case is valid and is not in derogation of the mandatory requirements set forth in the uninsured motorist statute. The court of appeal properly concluded that plaintiff was not entitled to recover under both the liability and U/M coverages of the GEICO policy.
[Underscoring added, footnotes omitted] [Nall v. State Farm Mutual Automobile Insurance Company, 406 So.2d at 219-220].
Insurers may limit their liability under a policy of insurance as long as the limitation does not conflict with statutory law or offend public policy. Oceanonics, Inc. v. Petroleum Distributing Company, 292 So.2d 190 (La.1974); Richard v. Board of Trustees of State Employees Group Benefits Program, 411 So.2d 491 (La.App. 1st Cir.1982). If the insurer of a host vehicle can legally exclude UM coverage (as in Breaux and Nall), then it must follow that such an insurer also can legally limit the coverage he contracts to provide. As indicated in Breaux and Nall, the insurer of the host vehicle is not bound by the public policy requirements of law for UM coverage. Such insurer may contractually exclude or limit his coverage.
The purpose of the limits of liability clause is to reduce the exposure under the UM coverage by the amounts paid under the bodily injury liability coverage. Since the limits of both coverages is $100,000, and since State Farm has paid Miller the full extent of the $100,000 coverage for bodily injury liability, the UM coverage must be reduced by that amount leaving no exposure by State Farm for that coverage. (The same is true for payments for medical services.)[3]

DECREE
For the foregoing reasons, the judgment of the district court is correct and is affirmed at the appellant's costs.
AFFIRMED.
NOTES
[1] In a supplemental and amending petition, Miller also sought medical payment and underinsured motorist insurance recoveries from his insurers, Aetna Life and Casualty Insurance Company (Aetna) and St. Paul Fire and Marine Insurance Company (St. Paul). Aetna was released from this suit on a motion for summary judgment. St. Paul filed an answer and third party demand against Duthu. Duthu filed answers to the main and third party demands.
[2] In this appeal, Miller does not contest the ruling of the district court that the Buick policy provides no coverage.
[3] The claim by Miller against his insurer, St. Paul, for UM and medical payments apparently has not yet been litigated.