519 So.2d 805 (1987)
Maurice FISHER
v.
Chester F. MORRISON, Delta Services Industries and Northwest Insurance Company.
No. CA 86 1542.
Court of Appeal of Louisiana, First Circuit.
December 22, 1987.
Rehearing Denied February 24, 1988.
Thomas L. Mahfouz, Morgan City, for plaintiff and appellant, Maurice Fisher.
George Ann Hayne Graugnard and Mr. Richard L. Edrington, Laplace, for defendant and appellee, Aetna Cas. & Sur. Co.
Peter J. Giarrusso, Houma, for defendant and appellee, Chester F. Morrison.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
This action commenced as a suit for damages in tort by the driver of a preceding automobile against the driver of a following *806 automobile which struck the preceding automobile in the rear, the following driver's employer and the insurer of the following driver and his employer. When the case was under advisement by the trial court, proceedings were stayed against the following driver's employer because the employer filed for reorganization under the bankruptcy law. Subsequently, the employer's trustee in bankruptcy was substituted as a party defendant, the stay was lifted and the trial court proceeded to render judgment in favor of the preceding driver and against the following driver, the trustee, and the insurer of the following driver and employer for $90,494.26, with legal interest thereon from date of judicial demand until paid and all costs. The trial court judge found, in pertinent part, the following facts in his reasons for judgment:
On or about July 2, 1982, within the Parish of Terrebonne, State of Louisiana, the plaintiff, Maurice Fisher, was driving his 1980 Ford vehicle West on United States Highway No. 90, at or near Gibson, Louisiana and was approaching the bridge which crosses Bayou Black. There was a curve in the road as it approached the bridge. Defendant, Chester F. Morrison, an employee of defendant, Delta Services Industries, acting within the course and scope of his employment with such defendant, was driving a 1982 Regal Buick automobile belonging to Porche Motor Company, West on United States Highway No. 90. The vehicle was leased to Delta Services Industries by Porche Motor Company and Chester F. Morrison was driving such with the knowledge, permission and consent of Delta Services Industries. At the time public liability and property damage insurance was provided by Western Perferred (sic) Casualty Company to the following defendants, Chester F. Morrison, Delta Services Industries and now, because of such bankruptcy proceedings, such coverage inures to the benefit of W. Simmons Sandoz, as Trustee of Delta Services Industries in bankruptcy.
The Court finds that said Chester F. Morrison drove his vehicle into the rear end of the plaintiff's vehicle, causing damage thereto and personal injury to the plaintiff, hereafter described.
Subsequently, Western Preferred Casualty Company (Western) was placed under an order of liquidation in the State of Alabama for insolvency. The preceding (Fisher) and following (Morrison) drivers filed applications for a new trial so Aetna Casualty and Surety Company (Aetna) could be made a party defendant as the liability insurer of Morrison and the uninsured motorist carrier of Fisher. The trial court set aside its prior judgment and granted a new trial on all issues. Fisher filed a supplemental and amending petition making Aetna a party defendant as the liability insurer of Morrison and the uninsured motorist carrier for himself.[1] Aetna, in its capacity as the liability insurer of Morrison, filed a motion for summary judgment contending Morrison's policy excluded coverage when he operated a non-owned vehicle furnished to him for his regular use in the scope of his employment. The trial court granted a consent summary judgment dismissing Fisher's claim against Aetna in its capacity as liability insurer of Morrison. No appeal has been taken from this judgment.
Aetna then filed a motion for summary judgment contending it did not provide uninsured motorist insurance coverage to Fisher because of the public conveyance exclusion in Fisher's policy. The trial court granted summary judgment dismissing Fisher's claim against Aetna in its capacity as his uninsured motorist carrier. This devolutive appeal followed.

FACTS
On July 2, 1982, Fisher was the named insured in an Aetna policy of insurance which provided liability and uninsured motorist coverages. However, the policy contained *807 public or livery conveyance exclusions for the liability and uninsured motorist coverages. Specifically, the policy provided, in pertinent part, as follows:
EXCLUSIONS A. We do not provide Liability Coverage for any person:
. . . .
5. For liability arising out of the ownership or operation of a vehicle while it is being used to carry persons or property for a fee. This exclusion does not apply to a share-the-expense car pool.
. . . .
EXCLUSIONS A. We do not provide Uninsured Motorists Coverage for bodily injury sustained by any person:
. . . .
3. While occupying your covered auto when it is being used to carry persons or property for a fee. This exclusion does not apply to a share-the-expense car pool.
In his discovery deposition, Fisher gave the following testimony:
Q Where were you going?
A I was coming into Morgan City.
Q Where were you coming from?
A Cutoff.
Q What time did you leave Cutoff?
A Pardon?
Q What time did you leave Cutoff?
A Probably an hour or so before I got there. Probably an hour and fifteen minutes before that happened.
Q What had you been doing in Cutoff?
A I took one or two men down to go on a boat. I don't remember if it was one or two.
Q Was that part of your work?
A Yes.
Q And you were paid for taking them down there?
A Yes.
Q Do you recall who paid you?
A The people did.
Q How much would you make for taking somebody, say, from Morgan City to Cutoff?
A $70.00.
Q $70.00 a head?
A No. $70.00.
Q All total for the load?
A Yes.
Q Would you make $70.00 if you had a whole car load of people?
A Yes, if I went to Cutoff.
Q Where did you pick those folks up?
A I don't remember. Here in town.
Q Here in Morgan City?
A Yeah.
Q So you had driven down to Cutoff that morning?
A Yes.
Q And dropped them off?
A And then come back.
Fisher testified as follows at the trial:
QUESTION:
You were not employed by for somebody as an employee; is that correct?
ANSWER:
No.
QUESTION:
You are independently employed?
ANSWER:
Yes.
QUESTION:
What is your job; what were you doing at that time?
ANSWER:
Taking people to the boat. That is what I do. I transport people.
QUESTION:
As I understand it and as the facts will bring out, Mr. Fisher, there is a company in Morgan City known as Crew Service?
ANSWER:
Yes.
QUESTION:
Crew Service is kind of an employment agency?
ANSWER:
Yes, it is.
QUESTION:
They provide offshore workers and crew members for different companies in South Louisiana or even the Texas area?
ANSWER:
Yes, that's true.
QUESTION:

*808 And as I understand it your job was when a man needed to be brought to a location whether it be Cutt Off (sic), Venice, Texas, wherever, they would on occasion call you and you would take that man to that location?
ANSWER:
That's true.
QUESTION:
You were not on the payroll, so to speak, for Crew Service?
ANSWER:
No, I wasn't.
QUESTION:
You were only paid when you brought a man to a location?
ANSWER:
This is true.
QUESTION:
And you were as I understand it paid a set fee depending on how far you went?
ANSWER:
That's true.
QUESTION:
Crew Service paid you, not the person you brought?
ANSWER:
Crew Service paid me, but it come out of the person's pay that I took.
QUESTION:
Some how (sic) or another they got their money back?
ANSWER:
Yes.
QUESTION:
But when you made a trip you turned in a trip ticket?
ANSWER:
That's true.
QUESTION:
And you were paid for what you did?
ANSWER:
True.
VALIDITY OF THE PUBLIC OR LIVERY CONVEYANCE EXCLUSION FROM UNINSURED MOTORIST COVERAGE

(Assignment of Error Number 1)
Fisher contends that the Louisiana Uninsured Motorist statute, La.R.S. 22:1406(D)(1), is intended to afford protection to insured persons when they are injured by uninsured motorists, that the only restriction on this statutorily mandated coverage is that the defendant motorist be uninsured (or underinsured) and the plaintiff legally entitled to recover damages, that the public or livery conveyance exclusion impermissibly narrows the statutorily mandated coverage, and that the trial court erred in granting a summary judgment in favor of Aetna. Aetna contends La.R.S. 22:1406(D)(1) does not prohibit the public or livery conveyance exclusion from uninsured motorist coverage, the Aetna policy validly excludes public or livery conveyance use from its liability coverage, and La.R.S. 22:1406(D)(1) does not require that uninsured motorist coverage be broader than liability coverage.
In Miller v. Duthu, 470 So.2d 500, 503 (La.App. 1st Cir.), writ denied, 474 So.2d 1310 (La.1985), appears the following:
An insurance policy is a contract between the insured and the insurer and has the effect of law between the parties.... Courts are bound to give legal effect to the terms of an insurance policy according to the true intent of the parties, and that intent is to be determined from the words of the contract when they are clear and explicit and lead to no absurd consequences. ... An ambiguity in a policy of insurance is construed against the insurer and in favor of the insured. ... In Landry v. Louisiana Hospital Service, Inc., 449 So.2d 584, 586 (La.App. 1st Cir.1984), appears the following:
Any exclusion from coverage in an insurance policy must be clear and unmistakeable (sic). If more than one interpretation of an exclusion is reasonable, the one affording coverage to the insured will be adopted. ... The burden is on the insurer to prove the applicability of an exclusionary clause in a policy of insurance.
Further, insurers may limit their liability under a policy of insurance as long as the limitation does not conflict with statutory *809 law or offend public policy. Miller v. Duthu, 470 So.2d at 505.
La.R.S. 22:1406(D)(1)(a) provides, in pertinent part, as follows:
(1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. [Emphasis added.]
In Block v. Reliance Insurance Company, 433 So.2d 1040, 1042 and 1044 (La. 1983), appears the following:
R.S. 22:1406(D), the uninsured motorist statute, provides that automobile liability insurance, delivered or issued for delivery in Louisiana, with respect to vehicles registered or principally garaged here, shall contain coverage for the protection of insureds who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of injury, unless such coverage has been rejected. The object of the statute is to promote recovery of adequate damages for innocent automobile accident victims by making uninsured motorist coverage available for their benefit as primary protection when the tortfeasor is without insurance, and as additional or excess coverage when he is inadequately insured. ... The intent of uninsured motorist coverage is `to protect the insured at all times against the generalized risk of damages at the hands of the uninsured motorists, not to limit coverage to certain situations or to a certain degree of risk of exposure to the uninsured motorists.' Elledge v. Warren, 263 So.2d 912, 918 (La.App.), writ denied [262 La. 1096], 266 So.2d 223 (La. 1972).
. . . .
Policies issued in Louisiana are considered to contain all provisions required by statute. ... Accordingly, R.S. 22:1406(D) is incorporated into every policy of insurance to which it is applicable, as if it were written in the policy itself. No insurance contract can include any provision inconsistent with or contradictory to any standard provision used or required to be used by the applicable sections of the Insurance Code. R.S. 22:623. Any policy provision which narrows the coverage mandated by the statute will not be considered.
For an extensive discussion of the history of and public policy for uninsured motorist coverage, see Elledge v. Warren, 263 So.2d 912 (La.App. 3rd Cir.), writ refused, 262 La. 1096, 266 So.2d 223 (1972). The uninsured motorist statute "is to be liberally construed to carry out this objective of providing reparation for those injured through no fault of their own." Hoefly v. Government Employees Insurance Company, 418 So.2d 575, 578 (La.1982).
At the time of the accident herein, the Aetna policy did not provide liability insurance for Fisher's automobile because of the public or livery conveyance exclusion therein. However, under the jurisprudence, the existence of liability coverage under the policy is not determinative of whether or not uninsured motorist coverage is mandated by the statute. In Bourgeois v. United States Fidelity and Guaranty Company, 385 So.2d 584, 586 (La.App. 4th Cir.), writ denied, 393 So.2d 736 (La.1980), a case which held the other vehicle exclusion could not affect uninsured motorist coverage, appears the following:
The statute requires that automobile liability policies provide UM coverage for the protection of persons insured under *810 the policy, unless the named insured rejects the UM coverage. As long as a claimant is insured under the policy, he is entitled to UM coverage whether or not he is driving a vehicle listed or covered under the policy, unless the named insured has rejected the UM coverage. UM coverage, as required under the statute, is designed to protect the persons insured under the policy. Any exclusion providing for more restricted UM coverage is in derogation of the statute. [Emphasis added.]
This interpretation has been followed in this circuit and the Third Circuit. Hebert v. Breaux, 398 So.2d 1299 (La.App. 3rd Cir.), writ denied, 401 So.2d 986 (La.1981); Griffin v. Armond, 358 So.2d 647 (La.App. 1st Cir.1978). Accordingly, we must conclude that the public or livery conveyance exclusion in the uninsured motorist coverage portion of the Aetna policy is violative of the public policy of La.R.S. 22:1406(D)(1)(a) and is unenforceable.
We are mindful of the persuasive views expressed in W. McKenzie and H. Johnson, Insurance Law and Practice, 15 Louisiana Civil Law Treatise § 118, at 249 (1986) as follows:
Either through a general exclusion or an exclusion from the definition of insured automobile, policies usually deny coverage to anyone occupying the automobile without the permission of the owner or while using the insured automobile for public or livery conveyance. These exclusions have not been tested in reported appellate decisions. However, they should be enforceable insofar as they exclude coverage for persons under circumstances in which that person would likewise be excluded from the liability coverage of the policy.72
72. But see, discussion of the `occupying certain vehicles' exclusion at the beginning of this section. The coverage anytime, anywhere approach of Elledge v. Warren, and its progeny could be utilized to invalidate the use of these exclusions against the named insured and relatives. However, such use would be an illogical extension beyond the scope of the liability coverage with which UM coverage is paired under LSA-R.S. 22:1406(D).

[Underscoring added.]
See also W. McKenzie, Louisiana Uninsured Motorist CoverageAfter Twenty Years, 43 La.L.Rev. 691 (1983). The jurisprudential weight of Elledge v. Warren and its progeny must be followed by this court at this time.
This assignment of error has merit.[2]

DECREE
For the foregoing reasons, the judgment of the trial court is reversed, Aetna's motion for summary judgment is denied, and this action is remanded to the trial court for further proceedings in accordance with law. Aetna is cast for the cost of this appeal.
REVERSED AND REMANDED.
NOTES
[1] In another pleading, Fisher made the Genway Corporation (Genway) a party defendant as the liability insurer of Porche Motor Company (Porche). Genway filed a motion for summary judgment contending it was not an insurance company and did not issue a policy of insurance to Porche. The trial court granted the summary judgment dismissing the claim against Genway. The record does not reflect an appeal from this judgment.
[2] Because we find merit in assignment of error number 1, it is unnecessary to pass on Fisher's assignment of error number 2 which contends the exclusion does not apply under the specific facts of this case.