657 So.2d 252 (1995)
Jody SANNER, et al., Plaintiff-Respondent,
v.
ZURICH-AMERICAN INSURANCE COMPANY OF ILLINOIS, et al., Defendant-Applicant.
No. W94-366.
Court of Appeal of Louisiana, Third Circuit.
May 10, 1995.
Writ Denied September 29, 1995.
Thomas Livingston Gaudry Jr., Wade Antoine Langlois, III, Gretna, for Zurich-American Ins. Co., et al.
Russell T. Tritico, Lake Charles, for Jody Sanner et al.
Michael Jesse, III, McNulty, Lake Charles, for Continental Cas. Co.
Robert Murray Mahony, Lafayette, for Acadiana Auto and Truck Rentals, Inc.
Before DOUCET, C.J., and KNOLL, SAUNDERS, DECUIR and AMY, JJ.
DOUCET, Chief Judge.
This writ application concerns the uninsured/underinsured motorist provisions of a policy of automobile insurance issued to cover certain antique automobiles.
*253 On August 23, 1991, Jody Sanner, a resident of Hackberry, Louisiana, was injured in a vehicular accident in the state of Indiana. She was a passenger in a truck owned by Acadiana Auto and Truck Rentals, leased to Lee Montet and driven by James Lowrey. The accident was alleged to have resulted from Lowrey's negligence. As a result of the accident, Ms. Sanner sued in Cameron Parish to recover damages allegedly sustained in the accident. Her husband, Vernon Sanner, sued for loss of consortium. The Sanners named Zurich-American Insurance Company of Illinois (Zurich) as a defendant. They claimed uninsured/underinsured motorist (UM) benefits under an "Antique Policy" issued to them by Zurich to cover certain antique automobiles owned by them.
Zurich filed a Motion for Summary Judgment contending that the antique policy did not provide UM coverage to the plaintiffs under the circumstances of the case. The trial court denied the motion. Zurich filed an application for supervisory writs to this court. The writ was denied by this court. Zurich applied for a writ of certiorari to the Louisiana Supreme Court. The supreme court granted the writ and remanded the matter to this court.
"When reviewing a trial court decision granting a motion for summary judgment, appellate courts consider the evidence de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Schroeder v. Board of Supervisors, 591 So.2d 342, 345 (La.1991). Thus, the appellate court must make an independent determination of whether `the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law.' La. C.C.P. art. 966(B). Thus, a trial court judgment granting a motion for summary judgment must be reversed unless the reviewing court finds that the mover proved both of the following elements: (1) no genuine issues of material fact exist, and (2) the mover is entitled to judgment as a matter of law. Chaisson v. Domingue, 372 So.2d 1225, 1227 (La.1979); Transworld Drilling v. Texas General Petroleum Co., 524 So.2d 215, 217 (La.App. 4th Cir.1988). Likewise, a trial court judgment denying a motion for summary judgment should be reversed if the appellate court finds that the moving party did prove the two elements listed above. In both instances, all evidence and inferences drawn from the evidence must be construed in the light most favorable to the party opposing the motion. Schroeder, 591 So.2d at 345. Additionally, all allegations of the party opposing the motion must be taken as true and all doubt must be resolved in his favor. Id."

Davis v. Brock, 602 So.2d 104, 105 (La.App.4 Cir.), writ denied, 605 So.2d 1146 (La.1992).
The trial court in this case apparently found that Zurich had not shown that it was entitled to summary judgment as a matter of law. It based its ruling in this matter on Howell v. Balboa Ins. Co., 564 So.2d 298 (La.1990). The trial court found that Ms. Sanner was entitled to pursue recovery under the Zurich policy because under Howell UM coverage follows the insured and cannot be made dependent on a relationship with a particular vehicle. However, a careful reading of Howell makes it clear that where the UM portion of the policy excludes coverage, UM follows the person only of one having insured status under the liability portion of the policy.
"The purpose of the UM statute is `to protect the insured at all times against the generalized risk of damages at the hands of uninsured motorists.' Jones v. Henry, 542 So.2d 507, 508 (La.1989) (citing Block v. Reliance Insurance Co., 433 So.2d 1040 (La.1983)). The courts of this state have recognized, both impliedly and explicitly, that this coverage cannot be qualified by a requirement of a relationship with an insured vehicle. See, e.g., Elledge v. Warren, 263 So.2d 912, 918 (La.App. 3d Cir.), writ denied, 262 La. 1096, 266 So.2d 223 (1972) (`[t]here is no requirement in the statute that the insured have any relation, at the time of the accident, with any vehicle he owns and that is insured with the insurer') (emphasis added); Griffin v. Armond, 358 So.2d 647, 649 (La.App. 1st *254 Cir.1978) (`the intent of the statute ... [is] to provide protection to an insured who becomes the innocent victim ... even though the insured may be riding in a vehicle which is not insured under his own insurer's policy'); Hastings v. International Service Insurance Co., 490 So.2d 656, 659 (La.App. 2d Cir.), writ denied, 493 So.2d 1223 [La.] (1986) (`[u]ninsured motorist coverage protects an insured without regard to whether the insured is in, or intends to enter, the insured vehicle'). See also Fisher v. Morrison, 519 So.2d 805 (La.App. 1st Cir.1987) (holding a `public conveyance' exclusion invalid under the UM statute; the exclusion was necessarily connected to a particular use of the insured vehicle). Compare Stewart v. Robinson, 521 So.2d 1241 (La.App. 3d Cir.), writ granted, 526 So.2d 785, appeal dismissed by parties, No. 88-C-1116 (La. Nov. 21, 1988).
The rationale that UM coverage cannot be made dependent upon a relationship with an insured vehicle has been followed almost uniformly by those courts of the various states with UM provisions not significantly different from our own.
* * * * * *
We expressly hold that UM coverage attaches to the person of the insured, not the vehicle, and that any provision of UM coverage purporting to limit insured status to instances involving a relationship to an insured vehicle contravenes LSA-R.S. 22:1406(D). In other words, any person who enjoys the status of insured under a Louisiana motor vehicle liability policy which includes uninsured/underinsured motorist coverage enjoys coverage protection simply by reason of having sustained injury by an uninsured/underinsured motorist." (citations omitted)
(emphasis added)
Howell v. Balboa Ins. Co., 564 So.2d at 301-302.
Accordingly, to determine whether Ms. Sanner is entitled to UM coverage under the Zurich policy, we must first determine whether she had insured status under the liability portion of the policy. See also Davis v. Brock, 602 So.2d 104. If Ms. Sanner is afforded coverage under the liability portion of the policy, we will not need to go further. UM coverage will follow Ms. Sanner's person without regard to her relationship with a particular vehicle. However, if Ms. Sanner did not have insured status under the liability portion of the policy, it will be necessary to consider whether she had insured status under the definitions given in the UM portion of the policy.
The liability portion of the Zurich policy reads as follows:
"A. We will pay damages for `bodily injury' or `property damage' for which any `insured' becomes legally responsible because of an auto accident involving `your covered auto.'....
B. `Insured' as used in this part means:
1. You or any `family member' for the ownership, maintenance or use of `your covered auto.'
2. Any person using `your covered auto.'
3. For `your covered auto,' any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part."
The liability portion of the policy under "Exclusions" provides that:
"B. We do not provide liability coverage for any person arising out of the ownership, maintenance, or use of any vehicle other than `your covered auto.'
The policy defines "your covered auto" as:
"1. any `antique vehicle' or `classic vehicle' shown in the Declarations.
2. any `antique vehicle' or `classic vehicle' of which you acquire ownership during the policy period provided that it replaces one shown in the Declarations and you ask us to insure it within thirty days after you become the owner. This automatic coverage for substitute vehicles does not apply to Part DLoss or Damage to Your Covered Auto."
It is undisputed that the vehicle in which Ms. Sanner was riding at the time of the *255 accident was neither one of the antique or classic vehicles described in the policy nor a substitute for any of them. Under the provisions of the policy, the policy holders were insured for liability purposes only "for the ownership, maintenance or use of `your covered auto.'" Further, the liability coverage excludes "coverage for any person arising out of the ownership, maintenance, or use of any vehicle other than `your covered auto.'" Under these provisions Ms. Sanner would not have been entitled to liability coverage under the Zurich policy because the need for coverage arose out of the use of a vehicle not covered by the policy.
Since she was not insured under the liability portion of the policy, her right to the UM portion of the policy depends on the definition of insured given in that portion of the policy. The UM portion of the policy states that:
"A. We will pay compensatory damages which an `insured' is legally entitled to recover from the owner or operator of an `uninsured motor vehicle' because of `bodily injury':
1. Sustained by an `insured' while `occupying' `your covered auto', and
2. Caused by an accident.
The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the `uninsured motor vehicle.'
Any judgment for damage arising out of a suit brought without our written consent is not binding on us.
B. `Insured' as used in this Part means:
1. You or any `family member' while `occupying' `your covered auto.'
2. Any other person `occupying' `your covered auto.'"
Since Ms. Sanner was not occupying one of the vehicles listed in the declaration sheet of the Zurich policy, she is also excluded from coverage under the UM portion of the policy.
As a result, Zurich was entitled as a matter of law to Summary Judgment finding that its policy did not provide UM coverage to Ms. Sanner under the circumstances of this case. The judgment of the trial court is reversed. Summary Judgment is rendered in favor of Zurich. Costs of this appeal are to be paid by the plaintiffs.
REVERSED AND RENDERED.
SAUNDERS, Judge, Dissenting.
The majority concludes that because Ms. Sanner was not riding in an antique or classic vehicle of the type insured by her, she had no uninsured motorist coverage under the circumstances.
I cannot agree with this legal conclusion because I think the policy language in this case must give way to the uninsured motorist statute. LSA-R.S. 22:1406 requires that:

"[N]o automobile liability insurance covering liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in the state with a prospect to any motor vehicle ... unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy...."
The provision makes no exception for antique cars. Therefore, I believe it to be necessary that we reform the language of the policy to comply with the uninsured motorist statute. Desormeaux v. Lalonde, 578 So.2d 226, 229 (La.App. 3d Cir.), writs denied, 581 So.2d 705, 706 (La.1991).
Therefore, I respectfully dissent.