622 So.2d 1105 (1993)
WEST AMERICAN INSURANCE COMPANY, Appellant,
v.
CHATEAU LA MER II HOMEOWNERS ASSOCIATION, INC., Appellee.
No. 92-2792.
District Court of Appeal of Florida, First District.
August 10, 1993.
*1106 Brian S. Duffy of McConnaughhay, Roland, Maida, Cherr & McCranie, Tallahassee, for appellant.
James C. Barth, Destin, for appellee.
PER CURIAM.
West American Insurance Company (West) appeals a final judgment determining that Chateau La Mer II Homeowners Association (Chateau) had coverage for collapsed balconies under an insurance policy issued by West. Chateau cross-appeals, contending the trial court erred in admitting certain exhibits and in making certain factual findings in its final judgment. We find that the factual findings in the final judgment are confusing, contradictory, and can be construed as inconsistent with the trial court's ultimate conclusion that coverage exists under this insurance policy. In fairness to both parties, we must reverse and remand to the trial court for clarification of the findings of fact.
Chateau La Mer II is a condominium complex in Destin built in 1981. There are 16 buildings with 4 units in each for a total of 64 units. In March 1991, experts who examined the buildings found that due to wood rot and/or termites, the balconies of 15 of the 16 buildings were in a state of collapse.[1] Prior to this, on August 30, 1990, West had issued a business owners insurance policy covering the property. West did not inspect the premises before issuing the policy.
In its policy, West contracted to pay for direct physical loss of or damage to the property unless the loss came within one of the exclusions set forth in the policy. As an express additional coverage, West agreed to pay for loss or damage caused by or resulting from risks of direct physical loss involving collapse of a building or any part of the building caused by hidden decay or hidden insect or vermin damage. Excluded from coverage were losses due to maintenance,[2] or faulty, inadequate or defective (negligent) design, construction, or maintenance. Nevertheless, with regard to the latter, the policy contains a proviso: "But if loss or damage by a Covered Cause *1107 of Loss results, we will pay for that resulting loss or damage."
When the collapse condition was confirmed, the insurance company was notified. When coverage was denied, Chateau filed suit seeking a declaratory judgment that the insurance policy covered the loss, relying upon policy provisions providing coverage for collapse caused by hidden decay and/or insects. In its answer, West denied coverage and affirmatively defended the suit on the grounds that the loss was due to excluded causes: either poor maintenance or negligent construction or design or a combination thereof. West did not allege that it was fraudulently induced to issue the policy or that Chateau was guilty of fraudulent conduct in securing it.
Prior to trial, the deposition of Fountain Conner, a structural engineer was taken. He examined the property at the request of the insurance company, or its agent, when the damaged balconies were reported. He discovered rotten and insect ridden joists under the balconies, and found that the support columns were severely damaged as well. When he arrived, the soffits from beneath the decks had been removed, and although the stucco had not been removed from the support columns, holes had been knocked in the columns providing a means of viewing the interior portion of the column. Significantly, he testified that had the soffits not been removed or the stucco knocked off the columns, the damage would have been unobservable and hidden. The expert structural engineers hired by West and Chateau agreed that the decay and termite damage was not visible or detectable without removing the soffits or drilling holes in the support columns.
At the subsequent trial, the experts generally agreed that there were no building code violations in respect to the construction of the balconies. Nevertheless, most agreed that the condominium complex was cheaply constructed. The experts disagreed on whether the condominiums were negligently designed or constructed, or were poorly maintained. The experts generally agreed that the balconies had leaked water through cracks in the concrete to the underside wood supports which eventually caused the wood to decay and attracted termite infestation.
Carol Williamson, the property manager for Chateau from 1986 through the date of the hearing, with the exception of a seven or eight month period, testified that Chateau was unaware of structural problems prior to March 1991. She testified that until the collapse condition of the balconies became known in March 1991 due to, in part, swarming termites, Chateau was unaware of the presence of termites on the premises. The property was regularly treated for termites.
Overruling a relevancy objection,[3] the trial court permitted West to introduce documents from Chateau's official records which reveal a myriad of maintenance problems, one being evidence of leaking balconies in the years preceding the collapse and efforts made to control the problem by sealing and caulking. One report of the rain damage recites:
Concrete slabs on the porches are cracking on top and chipping out on the sides. This allows water to collect on the plywood underneath the slab. The water eventually seeps through the plywood and through the roof panel under it. The water also runs off the plywood and behind the walls. Eventually supports, plywood will rot.
Photographs introduced indicate that at some point, the soffit had been removed on one balcony and the underlying joists repaired. There is no evidence when or why the repair was made or by whom. Experts for West "supposed" the repair had been made to replace damaged wood, and that indicated to them knowledge on the part of the association of an existing structural problem in one of the buildings. On the other hand, the association records indicate *1108 that the builder returned to the property several times to fix various problems. At one point, according to association records, the builder returned to seal the concrete slabs of the balconies. Evidence of the content and extent of communications between the builder and the association is lacking.
The final judgment of the trial court provides in pertinent part:
1. The damages sustained by plaintiff, CHATEAU LA MER II HOMEOWNERS ASSOCIATION, INC., in this case were caused by the collapse of the balconies, and the anticipated collapse of balconies, due to decay and/or insect damage.
2. The decay and insect damage was a direct result of faulty or inadequate construction and/or plans and/or specifications and/or maintenance.
3. The decay and insect damage condition was, or should have been, known by Plaintiff at the time the subject insurance policy was issued.
4. Plaintiff had knowledge of a pre-existing condition in the nature of leaking balconies and decaying wood for a period of years before issuance of the subject insurance policy.
6. Upon a very close reading and interpretation of the subject insurance policy, the Court finds that the damage incurred by Plaintiff, in the nature of collapse, is covered under the terms of the subject insurance policy. The Court finds no provision in the subject insurance policy that excludes coverage for a collapsed balcony caused by negligent construction and/or design and/or maintenance.
We agree that the subject policy expressly covers loss due to collapse from hidden decay, or damage by insects. Nowhere in its policy does West exclude coverage for the collapse of a balcony, due to hidden decay and insect damage, where the decay and insect damage is caused by faulty or inadequate design, construction, or maintenance. In Hartford Accident & Indem. Co. v. Phelps, 294 So.2d 362 (Fla. 1st DCA 1974), as in the present case, there was an affirmative statement of coverage and an exclusion arguably covering the same subject. The policy in Hartford covered "accidental discharge, leakage or overflow of water or steam from within a plumbing, heating, or air-conditioning system... ." At the same time, the policy excluded coverage for damage from "water below the surface of the ground... ." When the court considered the terminology used in the exclusion clause in para materia with the affirmative statement of coverage from leaks in the plumbing system, the court concluded that the exclusion was intended to relate only to damage from water not emanating from the plumbing system. Hartford, 294 So.2d at 363. Applying this rationale to the policy at issue herein, one can conclude that collapse due to hidden decay or insect damage is covered and the exclusions for negligent construction, design, or maintenance, apply to damage other than that resulting from collapse due to hidden decay and insects.
In Wallach v. Rosenberg, 527 So.2d 1386 (Fla. 3d DCA), rev. denied, 536 So.2d 246 (Fla. 1988), the appellate court approved an instruction which imposed upon the insurer the burden of proof to show by the greater weight of the evidence that the exclusion in the insurance policy was the sole, proximate cause of damage or loss to the property. There is no evidence in this case that negligent design, construction, or maintenance was the sole proximate cause of the collapse. There is no showing that the supports to the balconies would have degenerated into a collapse condition absent the introduction of termites. As in Wallach, there is no contention here that the policy contains a provision which specifically excludes coverage where a covered and an excluded cause combine to produce a loss. The trial court's finding of coverage is consistent with this case law, and with these observations concerning the state of the evidence as it appears from the record.
On the other hand, we cannot overlook the findings of the trial court indicating that the decay and insect damage were not hidden. Although it is permissible for an appellate court to reject the findings of *1109 a trier of fact if they do not rest on competent substantial evidence, and their legal effect has been misinterpreted by the trier of facts, Calvert Fire Insurance Co. v. Tarr, 391 So.2d 244 (Fla. 3d DCA 1980), we decline to do so in this case. As already pointed out above, both the evidence and the trial court's findings are susceptible to varying interpretations, so that we are unable to reconcile these findings with the result reached. The cause is therefore remanded to the trial court for clarification of its findings; and the trial court is specifically requested to make a finding on whether the decay and insect damage in this case was "hidden" within the coverage provisions of the policy. The trial court may receive such additional evidence as may be necessary, in its discretion.
REVERSED and REMANDED for further proceedings consistent with this opinion.
SMITH, KAHN and WEBSTER, JJ., concur.
NOTES
[1] None of the balconies had actually fallen down, though some were dangerously close to it, leading the experts to declare them in a state of collapse.
[2] Specifically, the policy excludes maintenance losses due to, among other things, rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in the property that causes it to damage or destroy itself; or settling, cracking, shrinking or expansion.
[3] In addition to the objection on relevancy grounds, Chateau objected because West's late request for these documents  on the eve of the trial  and West's effort to introduce them on the day of the trial, violated the letter, as well as the spirit, of the court's pretrial order which required completion of discovery two weeks before the commencement of the trial.