Equinox on the Battenkill Mgmt. Ass'n., Inc. v. Philadelphia Indem. Ins. Co., Inc., No. 315-8-13 Bncv (Wesley, J. Jan. 29, 2014).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Bennington Unit** | **Docket No. 315-8-13 Bncv** |

| | |
|---|---|
| **Equinox on the Battenkill Management Association, Inc.** **Plaintiff.** **v.** **Philadelphia Indemnity Insurance Company, Inc.** **Defendant.** | |

### Decision and Order Denying Plaintiff's Motion for Summary Judgment and Granting Defendant's Cross-Motion for Summary Judgment

Background

Plaintiff, Equinox on the Battenkill Management Association, brings this declaratory judgment action against Defendant, Philadelphia Indemnity Insurance Company, to determine coverage under a commercial general liability policy which Defendant issued Plaintiff. Plaintiff manages condominiums in Manchester. In September 2012, Plaintiff noticed damage to the cantilevered balconies on some of its units. Plaintiff sought coverage for the repairs, which Defendant denied in February 2013.

Plaintiff's cantilevered balconies have a history of repairs. Plaintiff replaced the untreated wood decking on the units with TREX planking. Plaintiff noticed water damage to some of the balconies and added structural reinforcements. In September 2012, Plaintiff noticed structural damage to the interior portions of some balconies. Plaintiff asserts that balcony M-7 collapsed and balcony K-3 partially collapsed. The damage was likely caused by moisture that rotted the structural support. The policy covers collapses that occur from hidden decay. Defendant disputes the damage was caused by "collapse" as defined by its policy. Defendant also asserts the balconies were built in an unprofessional manner exempting any damage from coverage.

In support of its motion for summary judgment, Plaintiff attached reports from engineering consultants. On October 23, 2013, Christopher Benda, of Criterium LaLancette Engineers, produced a building inspection report. He made the report from visual inspections, did not undertake any destructive or invasive testing, and acknowledged that the report was "not an exhaustive technical evaluation." The report noted the balconies suffered from water infiltration, insufficient reserve capacity, and an inadequate number of lag bolts. The report also notes cantilevered balconies often require continued maintenance because of rot issues. A letter from Richard LaLancette emphasized Mr. Benda's report did not evaluate the property for code violations or identify design deficiencies. A letter from Barbara Evans of Knight Consulting to Alfred New further describes the balconies. According to Ms. Evans, the balcony that allegedly

"fully collapsed," balcony M-7, had fallen approximately six inches. With repairs it sagged approximately two inches. The letter does not describe what happened to balcony K-3.

The policy creates an exclusion for "collapse" except as provided by additional coverage for collapse. The additional coverage for collapse covers losses caused by "hidden decay." The policy also excludes losses caused by "faulty, inadequate or defective: (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; (3) materials used in repair, construction, renovation…"

Plaintiff moved for summary judgment on October 28, 2013. Plaintiff asserts the balconies collapsed from hidden decay. Plaintiff concedes there is a Vermont case that is unfavorable to its position. *See Gage v. Union Mut. Fire Ins. Co.*, 122 Vt. 246 (1961). *Gage* held that "collapse" means falling together into a flattened form. *Id.* at 248. Plaintiff argues the Court should decline to follow *Gage*, or find it distinguishable, because the majority of courts have shifted away from its strict holding, and, further, the policy in this case is different from the policy in *Gage*.

Defendant moved for summary judgment on December 4, 2013. Defendant first argued the building damage was caused by defective construction, faulty design, and poor choice of materials. Under the exclusion for faulty design, they deny coverage. Second, Defendant argued, under *Gage*, the balconies did not collapse.

On January 21, 2014, Plaintiff opposed Defendant's motion for summary judgment. Plaintiff again argued *Gage* is not controlling because the law has evolved since 1961 and *Gage* involved different policy language. Specifically, the policy in *Gage* indicated "Loss by collapse shall mean only the collapse of the building(s) or any part thereof." In contrast, the policy issued to Plaintiff covered "loss caused by or resulting from risks of direct physical 'loss' involving collapse of building or any part of buildings… Collapse does not include settling, cracking, shrinkage, bulging, or expansion." Further, Plaintiff argues there are disputed material facts concerning the construction of the balconies that preclude summary judgment to Defendant in reliance on the exclusion for faulty design, workmanship or materials. Plaintiff filed a supplemental statement of disputed facts on January 22, 2014.

Standard of Review

The Court grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). The Court makes all reasonable inferences and resolves all doubts in favor of the non-moving party. *Lamay v. State*, 2012 VT 49, ¶ 6, 191 Vt. 635. When interpreting an insurance policy, the Court seeks to implement the plain meaning of an insurance contract. *Vt. Mut. Ins. Co. v. Parsons Hill P'ship*, 2010 VT 44, ¶ 21, 188 Vt. 80. Where an ambiguity exists, the Court construes the policy in favor of the reasonable expectations of the insured. *Id.* Further, it is the burden of the insurer to show an exclusion applies. *State v. CNA Ins. Cos.*, 172 Vt. 318, 330 (2001).

Discussion

The issue in these motions is the meaning of "collapse." As highlighted by the parties, *Gage* is the closest Vermont Supreme Court case to address this issue. *See* 122 Vt. at 248. In *Gage*, Plaintiff sought coverage for a buckled ceiling, heaves in the floor, splintered linoleum flooring, bends in the plumbing, changes in the door frame, separation of the fireplace from the chimney, and movement away from the foundation. *Id.* at 247. The policy covered "collapse", which "shall mean only the collapse of the building(s) or any part thereof." *Id.*

In analyzing the meaning of "collapse", the Supreme Court first gave an example: shingles blowing off of a roof would not be a collapse but the entire roof falling in would be a collapse. *Id.* at 248. The Court also quoted two dictionary definitions. *Id.* From Webster, "collapse" means "to fall together suddenly, as the two sides of a hollow vessel." *Id.* From Century Dictionary, "collapse" means "to fall together or into an irregular mass or flattened form, through loss of firm connection or rigidity support of the parts or loss of the contents, as a building through the falling in of its side…" *Id.* Under these definitions, the damages claimed by the plaintiff were not due to "collapse," as that term was used in the policy based on its evident meaning and usage. *Id.* at 248–49.

The Supreme Court noted but rejected a more expansive definition of "collapse" recognized by the Kansas Supreme Court. *Id.* at 249; *see Jenkins v. U.S. Fire Ins. Co.*, 347 P.2d 417, 422 (1959). The Kansas Supreme Court defined "collapse" as "the settling, falling, cracking, building or breaking of the insured building or any part thereof, in such manner as to materially impair the basic structure or substantial integrity of the building…" *Id.* The Vermont Supreme Court found the definition of collapse in *Jenkins* "far too expansive." *Id.*

In more than fifty years, our Supreme Court has not had occasion to revisit its holding in *Gage.* However, Judge VanBenthuysen more recently considered the meaning of "collapse" in an insurance contract. *See Murphy v. Patriot Ins. Co.*, No. 182062008, 2009 WL 9144510 (Vt. Super. Ct. Oct. 30, 2009) (VanBenthuysen, J.). The plaintiff's homeowner's policy covered collapse. *Id.* Collapse did not "include settling, cracking, shrinking, bulging or expansion." *Id.* The plaintiff made claims for collapse for storm damage, damage to the chimney, and damage caused by fungi. *Id.* The court applied the definition of "collapse" in *Gage* and granted summary judgment to the defendant. *Id.* The court quoted *Gage*, noting that *Gage* rejected the broad view of "collapse" upheld by the Kansas Supreme Court in *Jenkins*. *Id.*

Cases from other jurisdictions vary on the meaning of "collapse." *See What constitutes "collapse" of a building within coverage of property insurance policy*, 71 A.L.R.3d 1072. Plaintiff cites *Malbco Holdings, LLC v. AMCO Insurance Co.* arguing the modern trend is to follow Kansas's broad definition of collapse. *See* 629 F.Supp.2d 1185, 1195 (D. Or. 2009). However, the case law is too fragmented for such easy classification. For example, a homeowner sought coverage for imminent collapse of a deck under a homeowner's policy that defined collapse as falling into pieces and did not include settling or cracking. *Rosen v. State Farm Gen. Ins. Co.*, 70 P.3d 351, 353 (Cal. 2003). The California Supreme Court rejected the homeowner's claim as excluded by the plain language of the policy. *Id.* at 357. On the other hand, the Connecticut Supreme Court considered a case where a homeowner sought coverage for collapse

3

because of damage to the structural integrity of his home. *See Beach v. Middlesex Mut. Assurance Co.*, 532 A.2d 1297, 1300–01 (Conn. 1987). The court found the policy did not unambiguously require a sudden cave-in in order to trigger coverage, and therefore declared coverage in effect under the circumstances presented. *Id.* at 1301.[1]

Under Vermont law, the insurance policy in this case excludes coverage because Plaintiff did not suffer a collapse. Plaintiff can not escape the gravamen of the holding in *Gage*, which is binding precedent as applied to the circumstances here. "Collapse" means the building or a portion of the building must fall down or flatten. *See* 122 Vt. at 248. Plaintiff has offered no evidence of a collapse of this sort, as to either balcony M-7 or balcony K-3, thus the damages claimed by Plaintiff are too far removed from collapse to support coverage. *See id.* The report by Ms. Evans indicates that balcony M-7, the balcony that Plaintiff claims collapsed, sagged six inches. Sagging six inches is not a collapse under *Gage*. *See id.* Plaintiff provides even less information about the alleged partial collapse on balcony K-3. These vague assertions and a characterization of the damage as collapse are insufficient to survive a motion for summary judgment.

The Court does not adopt the more expansive definition of "collapse," urged by Plaintiff as the current majority view, because *Gage* explicitly considered the reasoning of *Jenkins* and rejected it as too broad. *See id.* at 249. Concurring with Judge VanBenthuysen's opinion in *Murphy,* this Court affirms that *Gage* is still good law. *See* 2009 WL 9144510.

The Court is not persuaded that the differences between the policies here as compared to *Gage* help Plaintiff. The policy in *Gage* defined "collapse" as "only the collapse of the building(s) or any part thereof." 122 Vt. at 247. In this case, the policy covers "loss caused by or resulting from risks of direct physical 'loss' involving collapse of building or any part of buildings… Collapse does not include settling, cracking, shrinkage, bulging, or expansion." The exclusion of collapse for settling, cracking, shrinkage serves to limit the meaning of collapse, not to expand it. The reasoning of *Gage* therefore still excludes coverage for the balconies.

Defendant is entitled to summary judgment because the balconies did not collapse. There are no material disputed facts and Defendant is entitled to judgment as a matter of law. *See* V.R.C.P. 56(a). For the same reason, Plaintiff is not entitled to summary judgment. The Court does not reach the question of the cause of the damage to the balconies.

---

[1] There are even a few cases concerning damage to balconies, although their holdings are not particularly useful here. *See, e.g.*, *Island Breakers v. Highland Underwriters Ins. Co.*, 665 So.2d 1084, 1085 (Fla. Dist. Ct. App. 1995) (finding disputed facts on the "the nature, extent, and cause of the damage found in some of the balconies of the condominium building."); *W. Am. Ins. Co. v. Chateau La Mer II Homeowners Ass'n, Inc.*, 622 So.2d 1105, 1107–09 (Fla. Dist. Ct. App. 1993) (remanding for fact finding on whether insect damage was hidden).

## Order

The Court **DENIES** Plaintiff's motion for summary judgment. The Court **GRANTS** Defendant's motion for summary judgment. Defendant shall submit a proposed judgment within 10 days of this entry.

Dated and signed electronically at Bennington, Vermont on January 29, 2014

_____
John P. Wesley
Superior Court Judge